**UNITED STATES of America**

**v.**

**David Kenneth CARNEY.**

**Crim. No. 15141.**

United States District Court,
M. D. Tennessee,
Nashville Division.

April 12, 1973.

# 856

Charles H. Anderson, U. S. Atty., and Joe B. Brown, Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

Lionel R. Barrett, Jr., Nashville, Tenn., for defendant.

## ORDER

FRANK GRAY, Jr., Chief Judge.

In the early afternoon of December 21, 1972, an officer of the Metropolitan Police Department of Nashville, Tennessee, learned from an informant that David Kenneth Carney, the defendant herein, was in possession of certain drugs and a silencer for a rifle. Because of the information concerning the silencer, the officer immediately notified agents of the Alcohol, Tobacco and Firearms Division (ATF) of the Internal Revenue Service, and a meeting was then arranged. Present at that meeting were the informant, Nashville police officers, and ATF agents. Following the meeting, the officers decided, based on the information furnished by the informant, to search the defendant's premises on South Hamilton Road in Davidson County, Tennessee. That same afternoon, consequently, the Metropolitan Police officers went before a State judge to obtain a warrant to search the defendant's premises. The ATF agents, however, did not attempt to obtain a warrant to search for the silencer and were content to return to their offices and wait for the Metropolitan Police officers to get their warrant.

The warrant to search the defendant's house was issued on December 21, 1972, at approximately 5:05 p. m. and was based on the informant's tip that the defendant was in possession of "marijuana and legend drugs." There was no mention either in the warrant or in the supporting affidavit of a silencer. The warrant itself was preprinted and purported to authorize the search for and seizure of virtually every drug that is a controlled or prohibited substance in the State of Tennessee, as well as a wide range of drug paraphernalia.

After the warrant was obtained, three Metropolitan Police officers and two ATF agents met at a prearranged time and place and, from there, proceeded to the defendant's house. Upon entry, the ATF agents commenced their search for

the silencer, and the police officers started searching for drugs. The police found some marijuana, and the agents found the silencer which became the basis for the case now before the court.

The defendant was indicted for the offense of possessing an unregistered silencer, in violation of 26 U.S.C. § 5861 (d). In advance of trial, the defendant filed a motion to suppress the introduction of the silencer as evidence on the ground that the affidavit in support of the search warrant was legally insufficient and that the search had exceeded the scope of the warrant. A hearing was held on this motion before trial and the court took the motion under advisement, being under the impression that only a question of law was at issue, and the case came on to be tried before the court, sitting without a jury. During the course of the trial, however, the facts set forth in the opening paragraph of this order, which facts were hitherto unknown to the defendant and the court, came to light. Consequently, the court took the case under advisement after hearing all of the proof offered in the case and invited the attorneys to submit briefs on the question of whether the search in  this case violated the Fourth Amendment rights of the defendant.

Thus, the court is presented with the novel situation in which federal officers, who have probable cause and a reasonable opportunity to obtain a search warrant, proceed, without a warrant, to search the dwelling place of another for a silencer, that search being contemporaneous with a search of the same house by state officers who were searching for contraband drugs under the authority of a state search warrant. The issue is whether such a search is violative of the Fourth Amendment.

The Government contends that the search in question was lawful, that it was justified under the "plain view" doctrine or under the theory that there was no invasion of the defendant's right of privacy because those rights were already lawfully invaded by the state officers who had a warrant. For the reasons which follow, the court rejects those theories advanced by the Government to justify the search, and holds that the federal agents' search of the defendant's home violated his constitutional rights under the Fourth Amendment.

■ First, a proper characterization of the facts at bar demonstrates that, instead of there being one search of the defendant's house in which both state and federal officers participated, there were in fact two searches of his premises, one search by state officers for drugs and another search by ATF agents for a silencer. These searches were conducted simultaneously; the former was conducted pursuant to a valid warrant, but the latter was a warrantless search. In other words, there were two sets of officers conducting two separate searches of the same premises at the same time. From these facts, two conclusions follow: (1) the "plain view" doctrine relied on by the Government has no application to these facts since the silencer was not found by the federal officers in the course of an otherwise lawful search; (2) the federal search must stand on its own merits, *i. e.*, it cannot borrow from the state search's legality in order to establish its own legality becauses it cannot be said, on these facts, that the ATF agents were merely assisting in a state search. The question, therefore, becomes whether a warrantless search, albeit with probable cause, of a dwelling by federal agents who had a reasonable opportunity to obtain a search warrant is violative of the Fourth Amendment. Inasmuch as warrantless searches of dwellings are per se unreasonable and there are no exigent circumstances present herein that would bring this search under one of the established exceptions to that rule, the court must conclude that this search was in violation of the Fourth Amendment. *See*: Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970);

Agnello v. United States, 269 U.S. 20, at 33, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

■■ Second, the search in question cannot be upheld even if it were to be assumed that the ATF agents were actually proceeding under the state search warrant, because that warrant would not meet the requirements of the Fourth Amendment or Rule 41 of the Federal Rules of Criminal Procedure. Tested under the federal standards, as it would have to be, Navarro v. United States, 400 F.2d 315 (5th Cir. 1968), and under the Fourth Amendment, the warrant for the search of the defendant's premises does not comply with the requirement that warrants particularly describe the things to be seized. This requirement, one of two protections embodied in the Fourth Amendment, manifests the intent of the founding fathers that searches should be as limited as possible, as well as their abhorrence of general searches. Coolidge v. New Hampshire, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This protection is of critical importance in a situation such as the one presented here; for the law enforcement officers knew that they were going to search for a silencer, indeed the federal officers would not have even been present had it not been for the information that there was a silencer in the house. Under these circumstances, therefore, the failure to include the silencer in the warrant, or even in the supporting affidavit, violated the particularity requirement of the Fourth Amendment and of Rule 41. To the extent that the state warrant might be relied on as a justification for the federal search for the silencer, it would not meet the requirements applicable here and the search for the silencer thereunder would be unconstitutional. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 1016 (1927).

■ The court, therefore, is of the opinion that this search is unconstitutional on alternate grounds. It remains, however, to take note of the Government's argument that the search did not violate the defendant's Fourth Amendment rights because the right of privacy protected thereby had already been lawfully invaded by the state officers. In essence, the Government says that, when the federal agents entered the premises the defendant had no Fourth Amendment rights to protect. In the first place, this argument is not supported by the case law; but, more importantly, it overlooks some of the basic protections that make up one's Fourth Amendment rights, such as the protection against general searches, and completely ignores the detrimental effect that such a ruling would have on police procedure and Fourth Amendment protections. The Fourth Amendment protections do not cease to exist once officers have obtained a search warrant. Moreover, the judicial preference for warrants is more than just an empty wish. In short, the court is convinced that adoption of the Government's theory would lead to an erosion of those protections embodied in the Fourth Amendment and in Rule 41.[1]

Since the only evidence offered by the Government to support the charge in the indictment is inadmissible, it follows that the motion for judgment of acquittal made by defendant at the close of the proof must be, and hereby is, granted.

1. The court is aware of the recent decision in United States v. Green, 474 F.2d 1385 (5th Cir. 1973), wherein a fire marshal's search, conducted immediately after a fire, turned up counterfeit plates which led him to contact federal agents, who immediately came and searched the premises without a warrant and wherein that subsequent search was upheld by the Court of Appeals. The court is of the opinion that the instant case is distinguishable on its facts from Green, and that those distinguishing characteristics point up the necessity for declaring this search illegal. Had the initial discovery of the silencer been legally made by another law enforcement arm and the ATF agents had entered subsequent to and pursuant to that discovery, the instant case would be analogous to Green; but that is simply not the case here.