UNITED STATES of America, Plaintiff-Appellant,

v.

Richard SANCHEZ, Defendant-Appellee.

No. 74–1454.

United States Court of Appeals, Sixth Circuit.

Jan. 31, 1975.

Frederick M. Coleman, U. S. Atty., Toledo, Ohio, Erie D. Chapman, III, Asst. U. S. Atty., for plaintiff-appellant.

Norman G. Zemmelman, Britz & Zemmelman, Toledo, Ohio (court appointed—CJA), for defendant-appellee.

Before CELEBREZZE and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

MILLER, J., delivered the opinion of the Court in which CELEBREZZE, J., joined. O'SULLIVAN, J., (p. 890) filed a dissenting opinion.

WILLIAM E. MILLER, Circuit Judge.

Richard Sanchez was indicted by a federal grand jury on November 29, 1973. The first count of the indictment charged defendant with receiving, concealing and storing explosives known or believed to be stolen, and count two charged the illegal storage of explosives contrary to federal regulations. (18 U.S.C. § 842(h)(j)). The third count charged the illegal possession of a firearm.

The defendant filed a motion to suppress the physical evidence on the ground that the items were obtained by means of an illegal search and seizure. After a pretrial hearing on the motion, the district judge ruled that the explosives (dynamite and related materials) had been illegally seized and ordered their suppression. As to the firearm the motion was overruled. Because the seized explosives were an indispensable part of the prosecution's case on the first two counts, the government has appealed the district court's suppression ruling as to these items. (18 U.S.C. § 3731). The validity of the seizure of the firearm is not before us.

On the evening of October 30, 1973, Officer David Mullin of the Toledo Drug Enforcement Unit, received a telephone call from a confidential informant who claimed that he had seen heroin in the

home of the defendant. Relying upon the tip of this previously reliable informant, the officer drafted a narcotics search warrant for the home of Richard Sanchez. The information about the drugs was received between 7 and 8 P.M. and the warrant was issued by a local judge at approximately 10 P.M. the same night. Having secured the warrant, Officer Mullin returned to his office to make arrangements for the raid. Shortly thereafter, he received another call from the same informant advising that there were also explosives at the Sanchez house. Mullin immediately contacted an agent of the Alcohol, Tobacco and Firearms Bureau (A.T.F.) of the Treasury Department; advised him of the explosives; and requested his assistance in the search.[1]

Although some two hours elapsed between the time the federal government was notified and the time the warrant was served, an additional warrant for the explosives was not sought by either local or federal authorities.[2] Sometime after 12 A.M. on the morning of October 31, 1973, several officers of the Toledo Drug Enforcement Unit, accompanied by one A.T.F. agent, executed the search warrant at the defendant's house. A thorough search of the premises failed to uncover any narcotics.[3] However, soon after entering the residence, the A.T.F. agent found in one of the rooms a box[4] and a foot locker containing together seventy pounds of explosives. By comparing the "date shift code numbers" on the explosives with those on a master list, the agent was able to determine immediately that the entire quantity had

recently been stolen from a company in another state. They were therefore seized without further ado and the federal indictment was returned some 30 days later.

Although the defendant was not entitled to possess explosives illegally, he was entitled to the protections of the Fourth Amendment with respect to any search and seizure.[5] See Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 76 L.Ed. 951 (1932); Trupiano v. United States, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); United States v. Jeffers, 342 U.S. 48, 52–54, 72 S.Ct. 93, 96 L.Ed. 59 (1951). To comply with the Fourth Amendment, every search and seizure must be made pursuant to a valid warrant unless an exception to this requirement is dictated by exigent circumstances. Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion); and see United States v. Gargotto, 476 F.2d 1009 (6th Cir. 1973); United States v. Nelson, 459 F.2d 884 (6th Cir. 1972).

The only warrant in this case was one directing the Toledo police to search the Sanchez house for narcotics. The simultaneous search by the federal agent for the explosives was admittedly conducted without a warrant. Nevertheless, the government's position apparently is that the warrantless intrusion was justified by the state's request for assistance and that the seizure of the explosives was constitutionally permissible under the plain view exception to Fourth Amendment protections.

1. The federal agent was an expert in the handling of explosives and apparently entered the premises for the specific purpose of searching for and seizing them.

2. The district court did not make a finding with regard to the adequacy of probable cause for the issuance of a warrant to search for explosives. However, neither party argued that the tip was insufficient for such a purpose. The crucial point remains that no attempt was made to seek a warrant.

3. There was testimony that the drugs may have been destroyed just before the officers entered the house.

4. This box was marked with a distinctive red symbol denoting that it contained explosive material.

5. There is some indication in the cases that the particularity requirements of a warrant may be relaxed when contraband is the subject of a search and seizure. See Stanford v. Texas, 379 U.S. 476, 485–486, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); United States v. DePugh, 452 F.2d 915 (10th Cir.), cert. denied 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805, reh. denied 409 U.S. 898, 93 S.Ct. 101, 34 L.Ed.2d 157 (1972).

Under certain circumstances police authorities are empowered to seize without a warrant articles in plain view. *See* Annot., 29 L.Ed.2d 1067 (1972). Unquestionably, in this case the two containers of explosives were not concealed and were clearly visible.[6] The warrantless seizure of the explosives would not offend the United States Constitution so long as all of the requirements of the plain view doctrine were satisfied.

█ An essential requirement is that the police officer must have a right to be in the position from which he is able to view the property. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam). Standing alone, the existence of a "plain view" is insufficient to justify application of the plain view exception. *Coolidge*, 403 U.S. at 468, 91 S.Ct. 2022 (plurality opinion). The government contends that its agent was rightfully on the premises because he had accompanied local police at their request when they had executed a valid narcotics search warrant. We find this argument unpersuasive. We believe that the warrant authorized only the local officers to enter and search the Sanchez property for narcotics. It could not be used to validate the entrance of a federal officer having both probable cause and the opportunity to obtain a separate warrant to search for different items of property. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927); United States v. Carney, 356 F.Supp. 855 (M.D. Tenn.1973).

On the facts of this case, there were two simultaneous but distinct intrusions, each conducted by separate agencies for the purpose of securing different types of property. Each search had to be authorized independently by a separate warrant unless the warrant requirement was excused by a valid exception. Here the federal agent had probable cause to suspect the presence of explosives in the defendant's house, and he had the opportunity to procure a proper warrant. Instead of doing so, he chose to ignore the warrant requirement and to enter the premises with local officers who were conducting a search for unrelated property. Such action circumvents the safeguards of the federal Constitution.

█ The Fourth Amendment provides that the essential elements of any warrant are that it issue only upon probable cause and that it particularly describe the place to be searched and the persons or things to be seized.[7] The requirement that a judicial officer make a probable cause determination insures that there exists a legal basis for the search. McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 93 L.Ed.2d 153 (1948). The particularity provision "prevents the seizure of one thing under a warrant describing another. . . . [N]othing is left to the discretion of the officer executing the warrant." Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). These constitutional requirements were designed to eliminate the pernicious general warrant. As stated in Weeks v. United States, 232 U.S. 383, 390, 34 S.Ct. 341, 343, 58 L.Ed. 652 (1914), the Fourth Amendment

> took its origin in the determination of the framers of the Amendments to the Federal Constitution to provide for that instrument a Bill of Rights, securing to the American people, among other things, those safeguards which had grown up in England to protect the people from unreasonable searches and seizures, such as were permitted under the general warrants issued under authority of the government by which there had been invasions of the

---

**6.** No contention is made that the explosives, because they were in containers, were not in "plain view."

**7.** Amendment IV—Searches And Seizures

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

home and privacy of the citizens, and the seizure of their private papers in support of charges, real or imaginary, made against them. Such practices had also received sanction under warrants and seizures under the so-called writs of assistance, issued in the American colonies. See 2 Watson on the Constitution, 1414 *et seq.* Resistance to these practices had established the principle which was enacted into the fundamental law in the 4th Amendment, that a man's house was his castle, and not to be invaded by any general authority to search and seize his goods and papers.

*See also* Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). To uphold the search and seizure by the federal agent in this case without the interposition of any of the Fourth Amendment restrictions would come perilously close to reviving the long discredited general warrant. This step we are not willing to take.

 When a law enforcement officer has prior knowledge of the existence and location of property which he has probable cause to believe is illegally possessed, as well as ample opportunity to obtain a judicially sanctioned search warrant, the Fourth Amendment mandates that he must follow this procedure. See Coolidge, 403 U.S. at 482, 91 S.Ct. 2022; Trupiano, 334 U.S. at 706–708, 68 S.Ct. 1229; *cf.* United States v. Lopez-Ortiz, 492 F.2d 109, 111 (5th Cir. 1974). If he fails in this duty, he may not proceed on the authority of another unrelated warrant to justify his intrusion. Because the A.T.F. agent had no right to be on the Sanchez premises during the raid, he did not satisfy the threshold requirement of the plain view doctrine and thus his warrantless seizure of the explosives was unconstitutional.

In its brief the government relies on the recent decision in United States v. Carwell, 491 F.2d 1334 (8th Cir. 1974), in which the court refused to suppress a revolver that had been seized by state authorities while executing a narcotics search warrant. In that case local police received information that drugs and possibly a gun were on the defendant's premises. The police swore out a warrant only for the narcotics but informed a special agent of the Alcohol, Tobacco and Firearms Bureau about the gun. The federal agent was occupied with other matters and did not accompany the local officers on their raid. Nevertheless, the police seized the weapon and turned it over to the appropriate federal authorities.

We do not regard *Carwell* as controlling since the opinion does not focus on the crucial issue presented by this case— whether the federal agent had a right to be on the premises in order to justify his warrantless seizure of property under the plain view exception. Unlike the present case *Carwell* did not involve a simultaneous search for different articles by local and federal authorities.

Affirmed.

O'SULLIVAN, Senior Circuit Judge (dissenting).

Respectful of the views of my colleagues who join in the majority opinion, I am constrained to record my dissent. If the facts of the case before us could be nicely fitted into the factual background of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), it would be presumptuous of me to express disagreement with its holding. It is my view, however, that the facts of the case at bar cannot be so read. I do not consider that the Fourth Amendment would be offended by denial of the defendant's motion to suppress.