**UNITED STATES of America**

v.

**James Royce WRIGHT.**

**No. S–75–17–CR.**

United States District Court,
E. D. Texas,
Sherman Division.

Dec. 11, 1975.

Roby Hadden, U. S. Atty., Gary Hagman, Asst. U. S. Atty., Tyler, Tex., for plaintiff.

Michael J. Whitten, Denton, Tex., for defendant.

## ORDER

JUSTICE, District Judge.

This criminal action arises from a search, jointly conducted by state and federal officers, which resulted in the seizure of both drugs and a sawed-off shotgun. As a result of the search, defendant Wright was indicted for possession of an illegal firearm, allegedly in violation of 26 U.S.C. §§ 5861(d) and 5871.

On January 31, 1975, Paul Carberry, a policeman of the city of Denton, Texas, sought and obtained from a state magistrate a combination arrest and search warrant for the person and residence of James Royce Wright. The affidavit in support of the warrants made reference to an informer's tip regarding narcotics in Wright's home. Special Agents Courtney and Von Briesen of the Dallas, Texas,

office of the Federal Drug Enforcement Administration (DEA) procured a warrant for the arrest of Wright, for a drug-related offense, from the federal magistrate in Sherman, Texas, on January 30, 1975. Courtney, Von Briesen, and Grimes (another Special Agent) then joined forces with Carberry and other Denton policemen, on January 31, 1975, with the intention of executing federal and state warrants simultaneously.

En route to Wright's residence, the officers and agents encountered Wright in his automobile, at a point approximately one-half mile from his home. Wright was immediately arrested by the officers, then placed in the automobile being driven by the two DEA special agents. At this juncture, Special Agent Courtney inquired of Wright, "if he still had the shotgun." Wright replied that he did, whereupon the entire group proceeded at once to Wright's residence. The state search warrant for the residence was then executed by the state officers, the federal agents entering the residence contemporaneously with the police officers. Special Agent Courtney subsequently seized the shotgun in issue, which he found against a wall of the living room of Wright's residence. It was only then that Wright was arraigned before a federal magistrate, and bail was set.

In subsequent proceedings in state court, it developed that the search warrant issued to the police officer, Carberry, was invalid on its face, as a matter of state law, since it was improperly executed outside the city limits of the City of Denton. *Irwin v. State*, 177 S.W.2d 970 (Tex.Crim.App.1944). As a result, the defendant's motion to suppress the evidence was granted by the state court, and all state charges arising out of the search were dismissed. The defendant argues that the invalidation of the state search warrant on state grounds renders the seizure of the shotgun invalid under the rule of *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Although the cases do not seem to support this position,[1] I find the seizure of the weapon here involved to be invalid on independent Fourth Amendment grounds, and therefore do not reach the "silver-platter" issue.

■ The Fourth Amendment to the Constitution stands as a first line of defense by the individual against the unwarranted invasion of the sanctity of his home by governmental authority. It requires that inferences as to probable cause for a search, "be drawn by a neutral and detached magistrate . . . [rather than] . . . by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). The effect of the failure to obtain a search warrant is succinctly expressed in *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1968):

> [T]he most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." "[T]he burden is on those seeking the exemption to show the need for it." (Footnotes omitted.)

Any potential bases for the admissibility of the shotgun in evidence must include the arguments that (1) it was discovered in plain view;[2] and (2) it was seized incident to a lawful arrest. Thus, consideration must be given as to whether either or both of these exceptions to

---

1. *See Elkins, supra*, 364 U.S. at 224, 80 S.Ct. 1437, *Patterson v. Lash*, 452 F.2d 150, 152 (7th Cir. 1971).

2. Special Agent Courtney testified that the shotgun was "in plain sight." Transcript, Motion to Suppress Hearing at 64.

the warrant requirement justify the seizure.

A prerequisite of the plain view exception is that the discovery of the evidence must be *inadvertent*. *Coolidge v. New Hampshire*, 403 U.S. 443, 469–71, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion).[3] Here, the DEA agents who seized the shotgun not only had seen the weapon in the defendant's home some time previously[4] but also had the defendant's own statement that he still had the weapon. It was early afternoon, magistrates apparently were available,[5] the defendant was in custody, and it was not shown that possible confederates were likely to have been alerted by the defendant's arrest on the road. The agents clearly had probable cause for the issuance of a search warrant; hence, in light of these facts, the plain view exception is foreclosed. *United States v. Sanchez*, 509 F.2d 886 (6th Cir. 1975); *Trupiano v. United States*, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948).

The further argument that the seizure of the shotgun was the product of a search incident to a valid arrest requires little discussion. When a valid arrest is made within a dwelling, the arresting officer may search the area "within which [the person arrested] might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). But the arrest of a person outside of his home provides no *carte blanche* to the arresting officers to search his residence. *Coolidge, supra; Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). Moreover, as previously discussed, the arrest of the defendant created no exigent circumstances which could justify the search. Rather, the arrest of the defendant served to *reduce* the chances that the gun would be removed before seizure by lawful authorities. Thus, neither the "plain view" nor the "search incident to arrest" exceptions can excuse the failure of the federal officers to obtain a federal search warrant.

## THE BYARS DOCTRINE

In addition to the above, however, there exists an even more fundamental regard in which the search in this case violated the strictures of the Fourth Amendment. In order for the prosecu-

---

**3.** The case of *U. S. v. Carwell*, 491 F.2d 1334 (8th Cir. 1974) cert. denied, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669, held the inadvertence requirement of *Coolidge* inapplicable to contraband, or to stolen or inherently dangerous items of evidence. *See Coolidge*, 403 U.S. at 472, 93 S.Ct. 2022, and Justice White's comments at 519. In *Carwell*, a state officer, who knew an illegal revolver was likely to be found in the defendant's apartment, seized the revolver in the course of executing a search warrant for narcotics. The court in *Carwell* noted, however, that there was "no indication that the search warrant for narcotics was in bad faith or a ruse to obtain entry in order to seize the revolver. The District Court specifically found that 'the search was strictly for drugs and the Officers had no specific intent to search for and seize a weapon.'" In this case, the only discernible reason for the agents' entry into the home was to seize the weapon they knew was there. Thus, while the underlying rationale for the *Coolidge* inadvertence requirement, that "plain view" should not serve as a pretext for diluting the Fourth Amendment requirement of "Warrants . .

particularly describing . . . [the] things to be seized," appears inapplicable to the *Carwell* facts, it precisely applies to the present fact situation.

**4.** Special Agent Courtney testified that he had seen the gun at Wright's residence some two months prior to the arrest. Transcript at 60.

**5.** Rule 41(a), Federal Rules of Criminal Procedure, provides in pertinent part:

(a) Authority to issue warrant. A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property is located, upon request of a federal law enforcement officer or an attorney for the government.

This court takes judicial notice of the fact that Denton, Texas, is the county seat of Denton County, Texas, and that a "judge of a state court of record" should ordinarily be available in the early afternoon. The government made no attempt at the hearing on the motion to suppress to show that the special agents could not have obtained a warrant pursuant to Rule 41(a).

tion to take advantage of the "plain view" doctrine, the officer involved must have viewed the evidence in question from a place where he has a right to be. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (per curiam). *United States v. Sanchez*, 509 F.2d 886 (6th Cir. 1975), presents a fact situation remarkably similar to the present one. In *Sanchez*, Officer Mullin, a police officer of the Toledo-Drug Enforcement Unit, obtained a warrant for the search of the appellant's residence, based on an informer's advice that narcotics would be found in the Sanchez home. After securing the warrant, Officer Mullin received another tip indicating that the appellant's residence also contained illegal explosives. Mullin then called an agent of the Alcohol, Tobacco and Firearms Bureau (ATF) of the Treasury Department and solicited his help. No federal search warrant was obtained, but an ATF agent assisted several state officers in executing the state warrant and located and seized a foot locker,[6] containing some seventy pounds of explosives, in the appellant's home. In finding the search invalid, the court held:

> The government contends that its agent was rightfully on the premises because he had accompanied local police at their request when they had executed a valid narcotics search warrant. We find this argument unpersuasive. We believe that the warrant authorized only the local officers to enter and search the Sanchez property for narcotics. It could not be used to validate the entrance of a federal officer having both probable cause and the opportunity to obtain a separate warrant to search for different items of property.

> On the facts of this case, there were two simultaneous but distinct intrusions, each conducted by separate agencies for the purpose of securing different types of property. Each search had to be authorized independently by a separate warrant unless the warrant requirement was excused by a valid exception. Here the federal agent had probable cause to suspect the presence of explosives in the defendant's house, and he had the opportunity to procure a proper warrant. Instead of doing so, he chose to ignore the warrant requirement and to enter the premises with local officers who were conducting a search for unrelated property. Such action circumvents the safeguards of the federal Constitution. (Citations omitted.)

In so holding, the *Sanchez* court relied on *Byars v. United States*, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1926), in which the court declared inadmissible whiskey strip stamps seized by a Federal Prohibition Agent while accompanying state officers in their execution of a state search warrant. Referring to the state warrant, the Court stated: "Whether it is good under the state law it is not necessary to inquire, since in no event could it constitute the basis for the federal search and seizure . . ." 273 U.S. at 29, 47 S.Ct. at 248.[7] Unsupported by either the state warrant, or by any exception to the warrant requirement, the search in this criminal action is invalid and the evidence must be suppressed.

In holding the search in this case invalid for lack of a warrant, I am mindful of the emphasis placed on the warrant requirement by the Court in *Coolidge, supra.*

In times of unrest, whether caused by crime or racial conflict or fear of internal subversion, this basic law and the values that it represents may ap-

---

**6.** The court found that the locker was "in plain view" when discovered. 509 F.2d at 889.

**7.** The *Byars* Court further stated that the Federal Prohibition Agent "was asked to participate and did participate as a federal enforcement officer, upon the chance, which was subsequently realized, that something would be disclosed of official interest to him as such agent." 273 U.S. at 32, 47 S.Ct. at 249. In excluding the evidence, the Court thus condemned such "leapfrogging" by federal officers on state warrants.

pear unrealistic or "extravagant" to some. But the values were those of the authors of our fundamental constitutional concepts. In times not altogether unlike our own they won—by legal and constitutional means in England, and by revolution on this continent—a right, of personal security against arbitrary intrusions of official power. If times have changed, reducing everyman's scope to do as he pleases in an urban and industrial world, the changes have made the values served by the Fourth Amendment more, not less, important. (Footnote omitted.)

*Coolidge, supra,* 403 U.S. at 455, 91 S.Ct. at 2032.

Accordingly, it is ordered that the motion of the defendant to suppress the evidence be, and it is hereby, granted.