**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Wanda Joyce LEE, Defendant-Appellee.**

**No. 77–5229.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 14, 1977.

Decided Aug. 21, 1978.

Rehearing and Rehearing En Banc Denied Oct. 20, 1978.

Patrick H. Molloy, U. S. Atty., Lexington, Ky., for plaintiff-appellant.

William C. Oldfield, Cobb & Oldfield, Covington, Ky., for defendant-appellee.

Before WEICK and KEITH, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

An indictment was filed in the United States District Court for the Eastern District of Kentucky, on December 2, 1976, charging the appellee, Wanda Joyce Lee, with knowingly receiving and concealing stolen goods, a quantity of silverware items of the approximate value of $27,000, which were moving as interstate commerce from the cities of Waynesboro and Harrisonburg, in the State of Virginia, to Kenton County, in the Eastern District of Kentucky, knowing said silverware items to have been stolen, unlawfully converted and taken. (Sec. 2315, Title 18, U.S.C.)

On December 20, 1976, a motion was filed on behalf of the appellee to suppress for use at the trial the items of silverware alleged in the indictment to have been taken from the residence of the appellee at 270 Webster Lane, pursuant to a search warrant issued by United States Magistrate J. Gregory Wehrman, on November 15, 1976. It is claimed that the warrant is defective in several respects.

Special Agent Gerald C. Gantenbein, of the Bureau of Alcohol, Tobacco and Firearms made an affidavit, on November 15, 1976, before J. Gregory Wehrman, United States Magistrate, for the purpose of obtaining a search warrant to search the premises of the appellee. He stated, "That he has reason to believe that" in the premises described as the residence of Wanda Lee,

"there is now being concealed certain property, namely firearms; to wit miscellaneous rifles, shotguns and handguns, papers or records pertaining to the acquisition and disposition of firearms which are being possessed in violation of Title 18, Section 922(j), U.S.C. and subject to seizure under Title 18, Section 924(d) of the 1968 Gun Control Act.

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: On November 15, 1976, I received the following information from a reliable confidential informant who has demonstrated his reliability in the past by providing information which has resulted in several arrests, the seizure of illegal firearms, narcotics and stolen property. The informant stated that within the past five days, the informant observed a subject named Wanda Lee, who resides at 270 Webster Lane, Independence, Kentucky, in possession at her residence of a large quantity of stolen property that was taken in residential burglaries in the State of Ohio. The informant further related that amongst this property there were several stolen firearms which had been transported from the State of Ohio to the State of Kentucky.

"The firearms were described as a miscellaneous lot of long guns and handguns totaling approximately fifteen in number. Several of these firearms are shotguns of varying descriptions and calibers. The informant also related that it is common practice for Wanda Lee to transport stolen firearms in the trunk of various automobiles available to her and that she sells or disposes of them from the trunk of the car.

"These firearms were personally seen by the informant at the residence of Wanda Lee, 270 Webster Lane, Independence, Kentucky.

"On November 15, 1976 a surveylance (sic) of the premises showed two vehicles parked on the premises. Vehicle # 1 is described as a 1974 Oldsmobile bearing Kentucky License # FJD 861, and Vehicle # 2 a 1971 Chevrolet bearing Kentucky License # FJD 862. A check of the Kenton County Registrar shows that both of the vehicles are registered to Wanda Lee, Box 270 Webster Road, Independence, Kentucky."

Upon this affidavit, Wehrman, the United States Magistrate, issued a search warrant directed

"To any Special Agent of the Bureau of Alcohol, Tobacco and Firearms or any other authorized person * * * "

The property described as concealed for which the warrant was issued is,

"miscellaneous rifles, shotguns and handguns, papers or records pertaining to the acquisition and disposition of firearms"

It was further stated in the warrant,

"and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above described and that grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s)."

It was commanded that the search for the property specified be made within forty eight hours and, if found to be seized, a return made of the property so seized and the property brought before the Magistrate.

The District Judge made Findings of Facts relative to the execution of the Search Warrant. We accept them as not being clearly erroneous. His Findings are as follows:

"The search was commenced the same day at 3:00 P.M. and lasted until almost midnight of the same evening. Involved in the execution of the search warrant were Special Agent Gantenbein and other special agents with the Bureau of Alcohol, Tobacco & Firearms and one State Police officer, Sgt. Heath (sic—Keith). As a result of the search, a large quantity of silverware, with a total value estimated at $39,145.29, and nine firearms were seized and taken from the premises. After the search was completed, Special Agent Gantenbein filed his inventory pursuant to Rule 41(d) with the United States Magistrate, but that inventory only included the firearms. Subsequently, after the defendant had moved the Court to suppress, alleging, among other things, that a complete inventory was not filed, another inventory was filed on January 12, 1977, listing the silverware taken.

"Upon execution of the search warrant, almost immediately upon entering the premises, Special Agent Gantenbein saw in clear view in the laundry room the large quantity of silverware. On some of the items were found initials which did not correspond with those of Wanda Lee. Included in those initials were the following letters: 'H,' 'LGG,' 'W,' 'WBH,' 'LM,' 'M,' 'MEM,' 'A,' 'ABP,' 'D,' 'E,' 'KW,' 'CSW,' 'DHA,' 'LHW,' 'HM,' 'EAA,' 'MAL,' 'LVM,' 'HD,' 'B,' 'SW,' 'HKC,' 'Y,' 'AB,' and 'HJ.' Some of these items were sterling silver. There were in excess of 200 separate items of silver taken, mostly flatware, but including candleholders, dishes, bowls, pitchers, large trays, a silver coffee pot, silver goblets, a silver service and several carving sets. These were all items not ordinarily seen in a person's laundry room and were found in open view there.

"After the agents had seen the silver, they found in the fireplace scraps of paper indicating that the silver belonged to a lady in Virginia. While the agents were still on the premises, the Kentucky State Police made telephone calls to Waynesboro, Virginia, and found that some two days earlier, the residence of a lady had been burglarized in that area and she had lost some silver in the burglary. Thereafter, the items listed in the two inventories were taken from the premises, with the firearms being taken by the federal agents, and the silver and other items taken by the Kentucky State Police. As a result, the indictment in this case was returned, charging the defendant, Wanda Joyce Lee, with a violation of 18 U.S.C. § 2315, knowingly receiving stolen property of a value in excess of $5,000.00, which had been transported in interstate commerce from Virginia to Kentucky. As far as can be determined at this time, no indictments have been returned in this Court pertaining to the firearms, nor have any state proceedings been instituted concerning the receipt of stolen property."

The District Judge considered the sufficiency of the warrant and search as raising the following questions:

"1. The warrant is defective because it was not directed to a specific federal agent.

"2. The inventory filed was defective.

"3. The silverware discovered was beyond the scope of the search.

"4. The failure of the affidavit to allege probable cause for the search warrant.

"5. The state officer was not authorized to participate in the search and, therefore, any items which were seized by him must be suppressed."

The Judge resolved the first three of these questions in favor of the government. We agree.

In considering the question of probable cause, the court held that this required a "two pronged" test,

"First, the affidavit must set forth some of the underlying circumstances forming the basis for the informant's conclusion that there is illegal activity or evidence thereof on the premises, and, second, it must state facts which give some assurance that the informant is a credible person."

The court held that the second prong of the test is met but that the affidavit failed in the first prong of the test to show that the Magistrate had probable cause to issue the search warrant.

We consider now the legal sufficiency of the affidavit to show probable cause.

It was in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, that the Court announced the "two pronged" test. With reference to the information of the informant the Court said, at page 114, 84 S.Ct. at page 1514,

" * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, * * * "

The affidavit[1] which prompted the announcement of this principle was clearly lacking in material information upon which to issue a search warrant. It will be noted that the affidavit states no facts from the informer. It is the affiant who, as a result of information, not specified, from an informer, believes drugs are hidden on the premises described. This is wholly different from the affidavit in the case before us.

Believing that the principles of *Aguilar, supra*, should be further explicated, the Court granted certiorari in *Spinelli v. United States*, 390 U.S. 942, 88 S.Ct. 1025, 19 L.Ed.2d 1130.[2] Although the affidavit in this case contained much more information than the one in *Aguilar*, the Court held it to be insufficient in accordance with the principle announced in *Aguilar*. Although the Court held the affidavit to be factually insufficient, the decision finally turned on the allegation relative to the informer. This allegation was that the F.B.I. had been informed,

" * * * by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones * * * "

Here, as in *Aguilar*, the affidavit gives no source of the information of the informer.

■ Affidavits are to be accorded a common sense interpretation. It was said in *United States v. Ventresca*, 380 U.S. 102 at 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, these decisions (*Aguilar* and others),

" * * * reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

1. "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the

purpose of sale and use contrary to the provisions of the law."

2. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

See *United States v. Jenkins*, 525 F.2d 819, 822 (6th Cir. 1975); *United States v. Giacalone*, 541 F.2d 508, 514 (6th Cir. 1976); *United States v. Swihart*, 554 F.2d 264, 267–268 (6th Cir. 1977).

In a recent opinion of this court, *United States v. Dudek*, 560 F.2d 1288, (6th Cir.), the court sustained the validity of a search warrant.[3] There were two affidavits in this case and the court held that they met the requirements of the two pronged test of *Aguilar, supra.* In arriving at this conclusion, the court drew heavily on the reasoning of *Ventresca, supra.*

■ Coming now to the affidavit before us, and interpreting it in the commonsense and realistic fashion provided in *Ventresca*, we conclude that the personal observance of the informant of a large quantity of stolen property taken in residential burglaries in Ohio, and having personally seen the firearms in question, satisfy the requirement of *Aguilar* that some "underlying circumstances" must be shown by the informer.

We said in *United States v. Sevier*, 539 F.2d 599, 603 (6th Cir.),

"Great deference, even in a doubtful case, must be given by courts to the determination of magistrates."

In *United States v. Swihart, supra*, we said,

"That determination should not be set aside unless arbitrarily exercised."

The statement of our court in *Jenkins, supra*, at 823 is applicable here.

"In the light of this discussion, we do not hesitate to say that the affidavit here at issue is considerably less than ideal. However, in determining whether a search warrant should issue, the magistrate deals only with probabilities rather than certainties."

We hold that the affidavit was sufficient to give the magistrate probable cause for issuing the search warrant.

The trial judge held that, even assuming, arguendo, the affidavit submitted in support of the search warrant established probable cause for its issue, the silver, the subject of the motion to suppress, found during the execution of the search, should be suppressed because of the participation in the search of Sergeant Keith, a Kentucky State Police officer.

Special Agent Gantenbein of the Federal Bureau of Alcohol, Tobacco and Firearms, in charge of the execution of the search warrant, requested the state officer to accompany him and participate in the execution of the warrant. He stated that it was his practice always in such cases to invite a state officer to participate in the search. The District Judge cited *United States v. Sanchez*, 509 F.2d 886 (6th Cir. 1975), in support of his decision.

The search began at 3:00 P.M. of the day the warrant was issued and continued until nearly midnight. Participating in the search with Special Agent Gantenbein were other special agents of the Bureau of Alcohol, Tobacco and Firearms and Sergeant Keith of the Kentucky police.

Immediately upon entering the premises to be searched, Agent Gantenbein saw, in clear view in the laundry room, a large quantity of silverware which is the subject of the motion to suppress in this case. There were in excess of 200 items of silver here, consisting mostly of flatware, but including candleholders, dishes, bowls, pitchers, large trays, a silver coffee pot, silver goblets, a silver service, and several carving sets. Some of the items were sterling silver and on some of them were various initials, none of which corresponded with the name of Wanda Lee.

After the agents had seen the silver, they found in the fireplace scraps of paper indicating that the silver belonged to a lady in Virginia. At this point the state officer took over the investigation and, by telephone calls to Waynesboro, Virginia, found that, a few days before, the residence of a lady had been burglarized in that area and that some silver had been stolen. Thereafter the firearms were taken by the federal agents and the silver by the state police. Upon completing the search, an inventory

---

**3.** *United States v. Wasserstrom*, 571 F.2d 351 (6th Cir. 1978).

was made and returned of the firearms but none was made of the silver until Agent Gantenbein made and returned one just prior to the hearing on the motion to suppress.

■ The District Judge found that, discovering the silver in the process of the search, under such circumstances as made it appear obvious that it was stolen, the officers had probable cause to seize it. We agree. However, in the judgment of the District Judge, it was the participation in the search by Sergeant Keith, as a state officer, and his subsequent investigation, seizure and possession of the silver that justified the suppression of the silver as evidence. We do not read *Sanchez, supra,* to require this conclusion.

Section 3105, Title 18, U.S.C. provides, "A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, *except in aid of the officer on his requiring it, he being present and acting in its execution.*" (Emphasis added)

Richard Sanchez was indicted by a federal grand jury on two counts involving the receiving, concealing and storage of explosives contrary to federal regulations. The charges grew out of a search made under the following circumstances.

On the evening of October 30, 1973, Officer David Mullin of the Toledo Drug Enforcement Unit received information from a confidential informant that he had seen heroin in the home of the defendant. Pursuant to this information he obtained a search warrant for narcotics for the home of Sanchez. Shortly after he had obtained the warrant he received another call from the same informant advising that there were explosives in the same residence. Officer Mullin then contacted an agent of the Alcohol, Tobacco and Firearms Bureau and advised him of the explosives and requested him to accompany him on the search.

Although two hours elapsed before the search was made, the federal agent did not obtain a search warrant to search for the explosives. In the process of executing the state search warrant, the explosives, which were the subject of the indictment, were found and seized by the federal agent. No narcotics were found by the state officer.

Here there were two simultaneous but distinct searches being conducted, one by a state officer for narcotics and the other for explosives by a federal officer. Only the state officer had a warrant, although the federal officer had probable cause to believe that there were explosives on the premises being searched and had had an opportunity to procure a search warrant. This, then, is the crux of this case, and the *warrantless* search a violation of the defendant's Constitutional rights guaranteed by the Fourth Amendment.

We do not interpret *Sanchez* to hold that the presence of the federal agent on the premises was per se unauthorized. The Court said at page 889,

"We believe that the warrant authorized only the local officers to enter and search the Sanchez property for narcotics. *It could not be used to validate the entrance of a federal officer having both probable cause and the opportunity to obtain a separate warrant to search for different items of property.*" (Emphasis added).

The warrant in the case at bar authorized "any Special Agent of the Bureau of Alcohol, Tobacco and Firearms or any other authorized person" to execute it. We believe that Agent Gantenbein had the authority to delegate Sergeant Keith to accompany him in the execution of the warrant. If he had that authority, he had the right to expect that he would assist in the search. As the District Judge said, if the silver had been taken by the federal agent, it would have been legal. We hold that it did not become illegal by reason of the participation of Sergeant Keith.

In the case before us, contrary to the *Sanchez* case, neither Agent Gantenbein nor Sergeant Keith had probable cause to believe that they would find stolen silver on the premises to be searched. We find no authority for the finding that Sergeant

Keith was on the premises of the defendant without authority.

Reversed and remanded with instructions to try the defendant on the indictment.

KEITH, Circuit Judge, concurring.

I concur in the judgment of the court and in the majority opinion. I would have preferred, however, a search warrant affidavit that fully set out the underlying circumstances which supported the informant's belief that the guns he saw at Lee's house were stolen, or which indicated that independent steps were taken by the agents to corroborate the informant's information.

In *United States v. Wasserstrom*, 571 F.2d 351 (6th Cir. 1978) (per curiam), cited in the majority opinion, the search warrant affidavit contained the following information:

That on or about September 28, 1976, a confidential informant, a citizen with no known criminal felony record, who has been a "simple witness" and not a "professional informant," obtained Stock Certificate No. AKC 209219, copy attached, 100 shares of Ohio Edison Company, issued to Sevilla W. Haver, from a drawer located under the front bedroom window on the third floor of the premises at 1985 Sunbury Road.

Said informant has told affiant that said certificate was one of approximately 1,000 certificates and 200 envelopes containing what appeared to be bond coupons which he observed in the drawer. Verification with Vercoe and Company, Mansfield, Ohio, the mailer of the stock certificate, discloses that said certificate was contained in Register No. 2794 of the United States Mails. This stock certificate is described by Vercoe and Company in the attached list of stock certificates which were contained in Register No. 2794. This register is listed in records of the U. S. Postal Service as being on an U. S. Postal truck which was robbed on September 24, 1976, in Franklin County,

Ohio, the mail pouch containing said register being illegally taken from said truck at that time.

Further, U. S. Postal Service information reflects the fact that approximately 200 envelopes containing bond coupons valued at approximately $136,000.00 were included in the stolen registered mail shipment.

Appendix in No. 77–5261 at V. This affidavit clearly shows how the agents verified the information given to them by the informant. It is far more detailed and factual than the affidavit here under consideration. The verification was made necessary, of course, by the fact that the agents could not rely on the "previous reliability" of this informant. But although the affiant in the instant case states that the informant had proven to be previously reliable, *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), that statement supports the informant's assertion that he saw the guns, and not that the guns he saw were stolen. *See United States v. Harris*, 403 U.S. 573, 586–601, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (dissenting opinion) (Harlan, J.).

In *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), involving a warrantless arrest made after the police officers had verified an informant's tip, and *United States v. Harris, supra*, involving the sufficiency of a search warrant affidavit, the police officers themselves either verified the informant's information, or the affidavit indicated how the informant knew that the suspect was engaging in illegal activity. The affidavit relied upon to obtain a search warrant in *United States v. Ventresca*, 380 U.S. 102, 103–4, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), was based upon the personal observations of the affiant Alcohol, Tobacco and Firearms (ATF) agent and other ATF agents. Thus, the statement in *Ventresca* that search warrant affidavits should not be read in an overly technical manner does not, I would suggest, apply to a situation where the affidavit is unclear as to how the informant obtained his information, and the affiant has not conducted any

independent verification of the informant's information. (In this case the agents did check the cars in front of Lee's house and established that she owned these vehicles, but that was irrelevant to the probable cause issue of whether the guns were stolen or not. The fact that she owned the cars is consistent with innocent activity.)

Cases from this circuit which have upheld the sufficiency of arrest warrant and search warrant affidavits have also involved situations where an element of probable cause was based upon information within the personal knowledge of the affiant, or where an informant's tip had been corroborated by police investigation. Thus, in *United States v. Jenkins,* 525 F.2d 819 (6th Cir. 1975), the affiant stated that he knew of his own knowledge that Jenkins was a convicted felon. Once that fact was established, probable cause to arrest Jenkins existed when the informants stated that they saw (personal observation) Jenkins carrying a gun. And in *United States v. Dudek,* 560 F.2d 1288, 1292–93 (6th Cir. 1977), the court noted that "not only were there two different and detailed listings of goods alleged to be located at the two different locations and a statement that all goods had been 'stolen in burglaries,' *but in addition, there was the confirmation by law enforcement officers themselves of one item of stolen goods, namely, the stolen boat."* (Emphasis added)

In the instant case, the search warrant affidavit alleges a violation of 18 U.S.C. § 922. In another case where a similar violation was alleged, the search warrant affidavit was supported by substantially more information and corroboration than is here presented:

> Rivard's [the informant] charges that Scherer [the suspect] was selling firearms from his house was bolstered by the four purchases made at this location, three of which were made under Government surveillance. Prior to each purchase Rivard had been able to provide Government agents with the name, price, and model number of each weapon eventually sold. Finally, Rivard's assertion that numerous weapons were lying about Scherer's house, and that Scherer was keeping two Thompson machine guns without serial numbers in a box in his barn was corroborated by two special agents who visited the defendant's farm prior to the search.

*United States v. Scherer,* 523 F.2d 371, 376–77 (7th Cir. 1975), *cert. denied* 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315 (1976).

Here the informant personally observed the quantity and variety of guns in Lee's house. This information is presented in the affidavit. The additional detail provided in the affidavit is the informant's assertion that the property he saw was stolen in Ohio, and that it was "common practice" for Lee to transport and sell stolen firearms from her car. While Lee's reputation might not be irrelevant in determining probable cause, *United States v. Harris,* 403 U.S. at 582, 91 S.Ct. 2075, it is certainly not a sufficient basis upon which to issue a search warrant. In *United States v. Harris, supra,* it was the affiant investigator's personal knowledge of the suspect's reputation which the Court held was a "practical consideration of everyday life" upon which an officer or Magistrate could properly rely when assessing the reliability of an informant's tip. 403 U.S. at 583, 91 S.Ct. at 2081. In the instant case the affiant agent appears to have had no personal knowledge of Lee's reputation. He does not confirm the unidentified informant's report that it was "common practice" for Lee to transport and sell stolen firearms; nor does the affidavit provide the Magistrate with the underlying circumstances from which the informant concluded that this criminal activity was a common practice with Lee. As to the other "detail," the affidavit does not indicate why the informant thought that the guns he saw were stolen in burglaries in Ohio, or that the ATF agents had taken steps to corroborate this information, and

had in fact corroborated it, prior to seeking a search warrant.