STATE of Missouri, Respondent,

v.

Earl Alvin HARRY, Appellant.

No. WD 37369.

Missouri Court of Appeals, Western District.

April 22, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 22, 1986.

Application to Transfer Denied July 15, 1986.

Roy W. Brown, Kearney, for appellant.

Stephen D. Hawke, Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

BERREY, Judge.

Defendant Earl Alvin Harry, appeals a six months sentence imposed by a jury on the charge of cultivating marijuana.

This case begins on or about July 24, 1984, when Conservation Agent Thomas Davidson went to check pond water, etc., on the John Hammer farm in rural Saline County. Davidson has a friend, Jim Chevalier, who lives a mile west of John Hammer, and he frequently goes by Hammer's home and business to visit Chevalier. He can see Hammer's business building and machinery from the road. However, on the day in question on the same road following directions given to him he pulled into the defendant's drive just east of Hammer's. Realizing he was not at the Hammer's residence, he decided to seek directions before he left. Agent Davidson testified he didn't remember the garage, the swing set, or the trailer on the property. He went to the door and knocked but received no answer. As he turned to leave, he testified he did remember seeing marijuana growing in a tire on the back side of the house. Agent Davidson acknowledged that as he left the county road and turned into the private drive he could not see the marijuana plants from the main road.

Agent Davidson got in his car and returned to the main road to continue on his journey to Hammer's property where he tested the pond. That evening he notified Missouri State Patrolman Gary Lile by telephone of his find. The next morning he again talked to Lile and drove him by the defendant's house. Davidson stated he did not drive Lile up the driveway and show him the marijuana. He testified, "[a]fter I showed him the house, then the case was his, not mine."

Though not preserved for review the transcript initially reveals that at the conclusion of the first preliminary hearing the defendant was discharged. The prosecuting attorney refiled the same case with the same evidence before a second Associate Circuit Judge who subsequently found probable cause and bound the defendant over for trial. Since the issue of multiple preliminary hearings involving the same defendant and the same facts is not before us we leave it in its present posture. The issue to be addressed in some future case.

Trooper Lile testified he was part of the patrol's marijuana eradication team. In this capacity he received word from Agent Davidson that marijuana was growing on the defendant's property. On July 29, 1984, Lile flew over the property in the patrol plane at which time he could not see any contraband and he took no pictures. He contacted Sergeant Temmen and Trooper Townsend, Missouri State Patrol officers, and on July 30, 1984, they went to the defendant's home in an unmarked patrol pickup truck, dressed in civilian clothes. This was three days after Davidson had contacted Lile. All officers agreed they did not have a search warrant. They pulled their truck into the drive of defendant's home and proceeded forty or fifty feet to the back of the house from which point they could see the marijuana growing in a tire.

The officers went to the door and talked to Mrs. Harry and asked her "if there was any more in the house." She said only what she had been smoking. She went inside the house and returned with a bag of processed marijuana. After this she and her husband were arrested and told to follow the officers into the county jail. During this episode the house was searched with the defendant's consent.

There is no dispute the marijuana was not visible from the road nor until a person was forty to fifty feet down the drive and past the house. None of the officers had clear recall about any of the other landmarks, a trailer, L.P. tank, swing or fences.

Trooper Lile was asked if he had any reason for not getting a search warrant prior to going to defendant's property to which he replied, "No Sir." Sergeant Temmen acknowledged he had previously assisted in serving a search warrant but that he had never obtained a search warrant. He stated that a sheriff's deputy had served the warrants he has assisted on since the highway patrol "cannot serve [a]

search warrant."[1]  Temmen testified he could secure an arrest warrant and he had no particular reason for not securing such a warrant that day.

The patrol officers were asked if the grounds appeared well kept and they responded in the affirmative.

Under such a set of facts one can only speculate as to the failure of the officers to secure a search warrant or arrest warrant. Even given the story of inadvertent observation by Davidson who knew the area, a judge should have been consulted as to whether there was probable cause to issue either warrant.  From the entire transcript there is no exigent circumstance presented such as to justify this intrusion.

The state contends the trial court did not abuse its discretion by holding that no search occurred since the marijuana was in "plain view of the officers."  The facts do not justify such a conclusion.

In order for the plain view doctrine to be applied the initial intrusion must have been lawful, the evidence was discovered inadvertently and the incriminating nature of the evidence must have been immediately apparent. *State v. Johns*, 679 S.W.2d 253, 261 (Mo. banc 1984).

Not addressing the issue of the how the conservation agent happened to be on the premises in the first instance, once there, he saw the marijuana in plain view and knew it to be incriminating.  Since an agent's authority to arrest and/or search is limited by statute, Chapter 252, RSMo 1978, a search warrant became a requirement with the agent's eyewitness account forming the basis of probable cause.

The state alleges the three state officers were properly within and upon the defendant's curtilage.  Except for the information received from another law enforcement agency they would not have been there. Certainly the marijuana was in plain view after they invaded defendant's property. This does not excuse the officers' neglect in securing a search warrant.  "It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available to the seizing officer."  *G.M. Leasing Corp. v. U.S.*, 429 U.S. 338, 354, 97 S.Ct. 619, 629–30, 59 L.Ed.2d 530 (1977).

In *Taylor v. Alabama*, 457 U.S. 687, 693, 102 S.Ct. 2664, 2668, 73 L.Ed.2d 314 (1982), the fact that police conduct was not flagrant or purposeful did not cure the illegality of the initial arrest and therefore the confession obtained as a result of the *Taylor* illegal arrest was suppressed.

The state alleges Trooper Lile only knew the plants were somewhere behind appellant's house and that the agent did not precisely locate them for him.  However, this allegation of the state is not supported by the evidence.  The agent told Lile "that he went to the back door of the house, and knocked on the door, and while he was standing there, he looked over, and in a tire marijuana was growing."  This was a specific and precise report from Davidson to Lile.  Davidson knew he was looking at marijuana, and this is not in dispute.  He said he had taken botany classes and knew from experience what marijuana looked like.

The state's request for inferences to be drawn from various acts of defendant and his wife is unsupported by authorities, Rule 84.04(d), and is not taken up by the court.

The court addressed a similar fact situation in *United States v. Sanchez*, 509 F.2d 886 (6th Cir.1975).  The court stated:

> When a law enforcement officer has prior knowledge of the existence and location of property which he has probable cause to believe is illegally possessed, as well as ample opportunity to obtain a judicially sanctioned search warrant, the Fourth Amendment mandates that he

---

**1.** The power of the State Patrol to search and seize is specifically limited by statute, § 43.200, RSMo Supp.1985.

must follow this procedure. See *Collidge [v. New Hampshire]*, 403 U.S. [443] at 482, 91 S.Ct. 2022 [at 2046, 29 L.Ed.2d 564 (1971) ]; *Trupiano [v. U.S.]*, 334 U.S. [699] at 706–708, 68 S.Ct. 1229 [at 1233–34, 92 L.Ed. 1663 (1948) ]; cf. *United States v. Lopez-Ortiz*, 492 F.2d 109, 111 (5th Cir.1974).

*Id.* at 890.

As the court noted by its affirmance in *United States v. Molkenbur*, 430 F.2d 563, 566 (8th Cir.1970), the rule is:

> To seize articles in plain view, police officers must rightfully be in a position to have that view *without the opportunity as a practical matter*, of obtaining a search warrant before making the seizure.

(Emphasis added.) Since the law enforcement officers had, for several days, the opportunity to secure a search warrant and failed to do so it is not necessary to address whether Conservation Agent Tom Davidson was lawfully upon the premises in the first instance. As we have seen herein there were no exigent circumstances and the officers had two or three days to contact the sheriff and have him apply to the local judge for the required search warrant.

Under *Sanchez*, the failure to secure the warrant is critical and according to *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), any evidence seized or verbal evidence derived from the unlawful entry and unauthorized arrest is subject to suppression as the "fruit" of the poisonous tree.

Here exists ample evidence of the growing of marijuana plants in a tractor tire in the well kept yard of the defendant from which it could be inferred that it was under cultivation in violation to § 195.030(2), RSMo 1978. From this information an arrest warrant and a search warrant could have been issued. "The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause." *Wong Sun, supra,* 371 U.S. at 481–2, 83 S.Ct. at 414.

It is difficult to conceive a stronger case of probable cause than existed herein; again not deciding the agent's initial intrusion.

"[V]erbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Wong Sun, supra,* 371 U.S. at 485, 83 S.Ct. at 416.

The seizure of the marijuana plants is suppressed. The seizure of any items located in the residence is suppressed. Any statements by the defendant to the officers are also suppressed.

Judgment is reversed and defendant is discharged.