**UNITED STATES of America,**
**Appellee,**

**v.**

**Carl Dean COTHREN, Appellant.**

**No. 11452.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1967.

Decided Nov. 7, 1967.

Certiorari Denied March 4, 1968.

See 88 S.Ct. 1038.

---

John E. Hall, North Wilkesboro, N. C., and T. R. Bryan, Wilkesboro, N. C. (McElwee & Hall, North Wilkesboro, N. C., on brief), for appellant.

William H. Murdock, U. S. Atty. (H. Marshall Simpson, Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN, CRAVEN and BUTZNER, Circuit Judges.

BOREMAN, Circuit Judge:

Carl Dean Cothren was tried before the court without a jury and convicted on both counts of a two-count indictment charging him with removing, concealing, and possessing non-tax paid whiskey in violation of 26 U.S.C. §§ 5205(a) (2), 5601(a) (12) and 5604(a) (1). On appeal, he challenges the legality of his arrest and the subsequent search for and seizure of the contraband whiskey which provided the evidence on which his conviction was based. We affirm.

Pursuant to information received from one who previously had furnished information which proved reliable, agents of the Alcohol and Tobacco Tax Division of the United States Treasury Department placed under surveillance a house which their informant advised them contained a cache of illegal whiskey. The house belonged to Cothren and his wife, but apparently was used by them only as a week-end retreat. On one occasion during their day-long observation, one of the agents, on moving closer to the house, detected the odor of illicit whiskey emanating from the basement. Later the same day, while still concealed in their hiding place, the agents observed the activities of several persons who drove up to the house, entered the basement and reappeared with cans which they loaded into their vehicles. Judging by the ease with which they were carried, the containers appeared to the agents to be empty. The agents also recognized Cothren as one of the parties removing the cans. Cothren, who was known to the agents personally, had a local reputation as a dealer in illicit whiskey.

Later, at about eleven o'clock that evening, accompanied by another party, Cothren returned to the house and again parked his automobile near the basement entrance. The two men entered the basement and shortly thereafter reappeared carrying plastic jugs which they loaded into the trunk of the automobile. The agents watched them make several trips and observed that the jugs were of a variety quite generally used in the illicit whiskey business in that area.[1] Thus the information which they had received was corroborated. At that point the agents approached the house, saw the two men through the open basement door and placed them under arrest as they were about to leave the basement with another load of jugs in their arms. Again, the

---

1. Originally, in the early morning darkness, the agents had positioned themselves several hundred yards from the rear of the house, but apparently daylight revealed that this distance was too great to permit an effective surveillance from that location. For that reason, they moved to a new location "only fifty-five steps" from the house. After backing his car up to the basement door, Cothren placed a large portable light in the trunk, doubtless to facilitate loading the jugs. This and the interior basement light which shone through the open basement door provided sufficient light by which the agents could easily watch Cothren's activities as he loaded the car.

odor of illicit whiskey permeated the immediate area of the basement entrance. The agents then took possession of the jugs which had already been placed in the trunk of the automobile and proceeded to search the basement where they found the remainder of the cache of illicit whiskey of which their informant had advised them. The jugs in the automobile were likewise found to contain nontaxpaid whiskey.

The district court determined (1) that the arrest was lawful as the agents had probable cause to believe that a crime was being committed in their presence, and (2) that the search was lawful as incident to a valid arrest. We agree with these determinations.

■ Clearly the facts known to the officers as outlined above gave them probable cause within the meaning of the Fourth Amendment [2] and reasonable grounds within the meaning of 26 U.S.C.A. § 7608(a) [3] to believe a felony was being committed in their presence.

■■ Cothren challenges the legality of the search of his automobile and the "dwelling house" and the admissibility of evidence obtained as a result of the search and seizure. He contends that the arrest was invalidated by the failure of the officers to obtain a search warrant when facts sufficient to constitute probable cause for the issuance of a warrant were known to them early in the day of the arrest and they had ample opportunity to obtain a warrant. Cothren apparently thinks that the persuasiveness of this argument is enhanced by the fact that he was arrested while still inside the house and that a search was made of the basement room. We assume, although he does not expressly say so, that Cothren is basing his argument on the rule laid down in Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). However, this limitation on police activity was modified only two years later in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), and we think that the law today, at least on facts such as here presented, remains as stated in that case:

> " * * * It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that Trupiano v. United States, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled.

**2.** See United States v. Shew, 324 F.2d 733 (4 Cir. 1963) (per curiam); United States v. Young, 322 F.2d 443 (4 Cir. 1963); United States v. Williams, 227 F.2d 149 (4 Cir. 1955) (appeal by the Government dismissed on other grounds).

**3.** Section 7608(a) provides:
"Enforcement of subtitle E and other laws pertaining to liquor, tobacco, and firearms.—Any investigator, agent, or other internal revenue officer by whatever term designated, whom the Secretary or his delegate charges with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of subtitle E or of any other law of the United States pertaining to the commodities subject to tax under such subtitle for the enforcement of which the Secretary or his delegate is responsible, may—
" * * *.
"(3) in respect to the performance of such duty, make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed, or is committing, such felony; and
"(4) in respect to the performance of such duty, make seizures of property subject to forfeiture to the United States."
See United States v. Price, 345 F.2d 256 (2 Cir. 1965); United States v. Boston, 330 F.2d 937 (2 Cir. 1964).

The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. * * *." Id. at 65–66, 70 S.Ct. at 435.

We do not attach any particular importance to the fact that Cothren was inside the open basement door at the moment he was placed under arrest, as found by the trial judge. Upon these facts there is no showing of invasion of the privacy of a home. The house was being used as a storage place for illicit whiskey. The agents could observe the interior of the basement from outside and they entered and searched the basement only after they had arrested Cothren. Cothren himself even denied knowledge of the ownership of the premises. We conclude that the searches were reasonable as incident to a valid arrest and the seizures were lawful under the circumstances.

Affirmed.