**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alberto PINTADO, Defendant-Appellant.**

**No. 82–5503.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 26, 1983.

Ron A. Dion, Spencer D. Levine, Entin, Schwartz, Angert, Dion & Broudy, North Miami Beach, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Robert M. Lipman, Barbara Schwartz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

PER CURIAM:

Appellant Alberto Pintado, along with five others, was indicted under 21 U.S.C. §§ 841(a)(1) and 846 of conspiracy to possess marijuana with intent to distribute (Count I) and possession of marijuana with intent to distribute (Count II). A jury returned a guilty verdict on Count I and was unable to reach a unanimous verdict as to Count II. Pintado appeals his conviction. Finding the evidence insufficient to support the verdict, we reverse.

Beginning at 8:00 p.m. on January 3, 1982, agents of the U.S. Customs Service ("Customs") conducted a surveillance of a house in a residential district of Key Largo, Florida. The house bordered a canal leading to the Atlantic Ocean. A racing-type "cigarette" boat was docked behind the house in the canal. Dock lights along the canal were illuminated. A light was detected in the house behind a curtain covering a picture window, and security lights in the rear of the house were on.

At approximately 1:00 a.m., January 4, Customs officers observed a light flash across the canal. One person, appearing to be a female, exited the house, proceeded to the seawall and sat down. Around 1:40 a.m. Customs officers saw several persons running empty-handed from the area around the house down to the boat, returning from the boat carrying large bundles in front of them, "moving so fast that they were hard to count [and] passing each other going and coming from the boat. Record, Vol. 2 at 34. Testimony revealed that "about six" persons were involved and the entire operation was conducted virtually silently.

Soon after these observations, a Customs vehicle with blue lights flashing drove up to the front of the house and agents announced "U.S. Customs" in English and allegedly also in Spanish. The officials who had been conducting the surveillance also approached the area. As Customs officials approached, two of the persons who were engaged in the offloading remained outside the house and were arrested. The others ran inside the house. Officials entered the house. A total of seven persons, six males and one female, were arrested.

Appellant Pintado was the last person arrested. Two agents climbed the stairs to the second floor of the house and were confronted with a pair of locked doors. An official knocked on one of the doors, announced in English "U.S. Customs" and asked whoever was in the room to come out. When no response was received, the door was forced open. Appellant, wearing a pair of pants and perhaps a shirt,[1] was found hiding in the closet.

Thereafter twenty-nine bales of damp marijuana wrapped in black plastic were discovered in and around a Volkswagen van parked inside an enclosed garage. The door of the garage was open. The officers found a "number of sets of clothing in the closet area [on the first floor of the house] which were wet and damp and dirty." Record, Vol. 2 at 80. There was no testimony as to the number of sets or the sizes of the clothing.

■ Appellant challenges the sufficiency of the evidence to sustain his conviction. In determining the sufficiency of the evidence:

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc),[2] *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

"In applying this standard all reasonable inferences and credibility choices must be made in favor of the jury verdict, and that verdict must be sustained if there is sub-

stantial evidence to support it when the facts are viewed in the light most favorable to the government." *United States v. Davis,* 666 F.2d 195, 201 (5th Cir. Unit B 1982).

■ To establish a conspiracy to violate the narcotics laws under 21 U.S.C. § 846, the government must prove there was an agreement by two or more persons to violate those laws and that the individual defendant was one of the parties to that agreement. *United States v. Blasco,* 702 F.2d 1315, 1330 (11th Cir.1983); *United States v. Tamargo,* 672 F.2d 887, 889 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982). The existence of a conspiratorial agreement may be established through direct and/or circumstantial evidence, *United States v. Blasco,* 702 F.2d at 1330, including " 'inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.' " *Id., quoting United States v. Spradlen,* 662 F.2d 724, 727 (11th Cir.1981). To be guilty of a conspiracy a defendant need not have knowledge of every detail of the conspiracy. Knowledge of the primary objective of the conspiracy will suffice. *Id., citing United States v. Tamargo, supra,* 672 F.2d at 889. No showing of an overt act is required to prove a conspiracy under 21 U.S.C. § 846. *Id.* at 1330; *United States v. Davis,* 666 F.2d 195, 201 n. 9 (5th Cir. Unit B 1982).

Here, as in *United States v. Blasco,* 702 F.2d at 1331, we have no doubt but that the government adequately proved the existence of a conspiracy. The issue before us is whether the totality of the evidence was sufficient, in conjunction with reasonable inferences that could be drawn therefrom, for the jury to conclude that appellant was a member of that conspiracy. We answer this question in the negative. *Cf. United States v. Blasco,* 702 F.2d at 1331–32.

---

1. The evidence is conflicting as to how completely attired the defendant was. Looking at the evidence in the light most favorable to the government, as we must for these purposes, *see* text *infra,* at 1503, appellant was wearing a shirt. There is no evidence as to whether he wore shoes.

2. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), this court adopted as precedent all decisions of Unit B of the former Fifth Circuit.

In *United States v. DeSimone,* 660 F.2d 532, 536–38 (5th Cir. Unit B 1981), the court held that the evidence adduced at trial was insufficient to support a jury verdict of guilt of conspiracy to possess narcotics.[3] In so concluding the court stated:

> We have consistently held that mere association with persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy. *See, e.g., United States v. Horton,* 646 F.2d 181, 185 (5th Cir.1981); *United States v. Fitzharris,* 633 F.2d 416, 423 (5th Cir. 1980); *United States v. Barrera,* 547 F.2d 1250, 1257 (5th Cir.1977). We have just as strongly emphasized that mere presence at the scene of the crime is not enough to sustain a conspiracy conviction. *See, e.g., United States v. Reyes,* 595 F.2d 275, 280 (5th Cir.1979); *Barrera, supra,* at 1256. Presence followed by flight is also inadequate proof. *United States v. Lopez-Ortiz,* 492 F.2d 109, 115 (5th Cir.1974). In this case, we are confronted with the combined circumstances of DeSimone's association with his co-defendants at various times over a period of several days and his attempted flight in the middle of the night from an automobile which was ditched near the Greensboro airport, a remote area. This evidence certainly arouses suspicion, but does it prove beyond a reasonable doubt that DeSimone conspired to import and distribute marijuana? We think not.

*Id.* at 537. *See also United States v. Soto,* 591 F.2d 1091 (5th Cir.1979); *United States v. Maspero,* 496 F.2d 1354 (5th Cir.1974).[4]

■ *DeSimone* and the other cases cited above correctly state the law that neither mere presence nor presence at the scene in conjunction with fleeing or hiding from officers of the law alone will support a conspiracy conviction. *See United States v. Lopez-Ortiz,* 492 F.2d 109, 115 (5th Cir. 1974). Since the decisions in these cases, however, this court has adopted a new standard for judging the sufficiency of the evidence set forth above. *United States v. Bell, supra,* 678 F.2d at 549 (a jury verdict of guilt must stand if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt").

In *United States v. Blasco,* 702 F.2d at 1332, we applied the *Bell* standard and held that presence in the early morning hours on a secluded piece of property at which an off-load operation was being conducted, an enterprise that created noise that could be heard over 200 yards away and a pungent odor of marijuana that pervaded the air, constituted more than mere presence and that "a reasonably cautious jury could infer from these circumstances" that both the defendants arrested while attempting to flee and hide from officials and those inside and sitting outside the house were involved in a conspiracy to possess with the intent to distribute marijuana. *Id.* In other words, we held that participation in the conspiracy reasonably could be inferred from the presence of the defendants in conjunction with all of the circumstances surrounding that presence.

**3.** In *DeSimone* appellant and several codefendants were arrested in the vicinity of an airplane which had landed at a secluded airport in the early morning hours laden with marijuana. The defendant was identified as one who had been in the presence of several other defendants the preceding afternoon. The preceding week some of the codefendants rented two trucks, a trailer, a van, several skate conveyors, and two automobiles. Several of the defendants had registered as a group in a Quality Inn motel; all rooms paid for in cash by one of the defendants and registered in the name of a fictitious land development company.

Customs agents and police officers, after receiving a tip, corralled the airplane loaded with marijuana, arrested a codefendant in a tractor-trailer and another in a fuel truck, both near the plane, and apprehended DeSimone and other defendants in the vicinity of one of the rented cars which had been ditched on the road leaving the airport.

While the evidence was found insufficient in *DeSimone* to convict, clearly there was much more evidence to tie DeSimone to the conspiracy there than the appellant to the conspiracy in the instant case.

**4.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding on this court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

■ We reach a contrary conclusion here. The government provided no evidentiary basis other than appellant's presence in the house, hiding in the closet, from which an inference of conspiratorial participation could be drawn.

Even though the testimony showed that appellant was clothed in pants and a shirt, *see* note 1 *supra,* and from this the jury reasonably could reject defense counsel's argument that appellant had been sleeping in the bedroom at the time the customs officials entered the house, presence in the house, awake or asleep, without more, does not provide a sufficient basis to infer participation or agreement. There are no objective facts or circumstances from which appellant's knowledge of the ongoing operation could be inferred. *Cf. id.* at 1332. Government witnesses testified that the off-loading operation was conducted almost silently, the garage in which the marijuana was found was not visible from within the house where appellant was discovered, and the government provided no connection between the marijuana and the appellant other than his clothed, hidden presence in the house.[5] Several sets of damp, dirty clothing were found in the house. The clothing was in no way tied to the appellant either through evidence that the number of sets of clothing coincided with the number of arrestees or indictees or that the size of any set of clothing was compatible with appellant's clothing size.

Whether or not the government could have proved its case on the basis of potential evidence at its disposal, we conclude that the evidence introduced at trial and all reasonable inferences therefrom were insufficient for "a reasonable trier of fact [to conclude] that the evidence establishe[d] guilt beyond a reasonable doubt." *United States v. Bell, supra,* 678 F.2d at 549. Hence we REVERSE.

JAMES C. HILL, Circuit Judge, Concurring Specially.

Although I perceive a tension between this case and *United States v. Blasco,* 702 F.2d 1315 (11th Cir.1983), it is clear that we are bound by *United States v. DeSimone,* 660 F.2d 532 (5th Cir. Unit B 1981). Applying the court's judgment in *DeSimone* to the particular facts in this case results in my concurring in the result here.

---

**5.** The government relies on the combination of the facts that a Customs officer testified that "about six" persons were observed participating in the off-load operation and a total of seven persons were arrested but only six indicted because officials apparently believed that the female was not involved in the operation or the conspiracy, to argue that it was reasonable for the jury to infer that only six persons were involved and those six persons were the ones indicted. Such an inference is not reasonable due to the presence of two facts: (1) the Customs official affirmatively stated that he could not tell whether there were four, five, six, seven, or some other number of persons present and was merely estimating that there were "about six"; (2) more importantly, there was undisputed testimony that "what appeared to be a female," Record, Vol. 2 at 33, was seen sitting on the seawall at approximately 1:00 a.m. There was only one female discovered on the premises. Considering these two facts the jury could not reasonably conclude that the female was asleep in the house during the entire operation as the government would have had them believe in an attempt to equate the admittedly estimated number of off-loaders and the number of indictees.