UNITED STATES of America,
Plaintiff-Appellee,

v.

Alberto LOPEZ–LLERENA, Felix Parra, Jose Borges, Jose Delfin Mule Vasquez, Lazaro Cruz, Jr., Hector Theodore Valdes, Fausto Manuel Sanchez, Raul Pinera, Carlos Oliver-Chirino, and Jose Luis Marino, Defendants-Appellants.

No. 82–5916.

United States Court of Appeals,
Eleventh Circuit.

Aug. 30, 1983.

Certiorari Denied March 19 and April 16, 1984.
See 104 S.Ct. 1602, 1913.

Weiner, Robbins, Tunkey & Ross, P.A., William R. Tunkey, Geoffrey C. Fleck, Miami, Fla., for Lopez-Llerena, Parra, and Borges.

Bruce H. Fleisher, Coral Gables, Fla., for Curuz, Valdes, Sanchez, Pinera and Chirino.

Mark King Leban, Miami, Fla., for Marino.

Stanley Marcus, U.S. Atty., Miami, Fla., Lurana Snow, Asst. U.S. Atty., Fort Lauderdale, Fla., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS *, District Judge.

PER CURIAM:

AFFIRMED; Circuit Rule 25. *See United States v. Blasco,* 702 F.2d 1315 (11th Cir.1983).

---

UNITED STATES of America,
Plaintiff-Appellee,

v.

Alberto LOPEZ–LLERENA, Felix Parra, Jose Borges, Jose Delfin Mule Vasquez, Lazaro Curuz, Jr., Hector Theodore Valdes, Fausto Manuel Sanchez, Raul Pinera, Carlos Oliver-Chirino, and Jose Luis Marino, Defendants-Appellants.

No. 82–5916.

United States Court of Appeals,
Eleventh Circuit.

Dec. 16, 1983.

Certiorari Denied March 19 and April 16, 1984.
See 104 S.Ct. 1602, 1913.

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

Weiner, Robbins, Tunkey & Ross, P.A., William R. Tunkey, Geoffrey C. Fleck, Miami, Fla., for Llerena, Parra and Borges.

Bruce H. Fleisher, Coral Gables, Fla., for Curuz, Valdes, Sanchez, Pinera and Chirino.

Mark King Leban, Miami, Fla., for Marino.

Stanley Marcus, U.S. Atty., Miami, Fla., Lurana Snow, Asst. U.S. Atty., Fort Lauderdale, Fla., for defendants-appellants.

## ON PETITIONS FOR REHEARING

(Opinion August 30, 1983, 11th Cir., 1983, 721 F.2d 311).

Before FAY and KRAVITCH, Circuit Judges, and ATKINS *, District Judge.

PER CURIAM:

A panel of this court affirmed the appellants' convictions pursuant to Circuit Rule 25, relying on *United States v. Blasco,* 702 F.2d 1315 (11th Cir.1983). The appellants have filed a petition for rehearing and a suggestion for rehearing en banc, contending that the affirmance of their convictions is in conflict with this court's subsequent decision in *United States v. Pintado,* 715 F.2d 1501 (11th Cir.1983). We disagree and deny the petition for rehearing.

Like the appellants in this appeal, the defendants in *Blasco* and *Pintado* challenged the sufficiency of the evidence for their convictions under 21 U.S.C. § 846 of conspiracy to possess marijuana with intent to distribute. Both *Blasco* and *Pintado* were decided on the principle that although presence and flight alone are insufficient to establish that the defendant was a member of the drug conspiracy, a reviewing court must consider the totality of the circumstances, including the facts of presence and flight, to determine "if there is substantial evidence to support [the jury verdict] when the facts are viewed in the light most favorable to the government." *United States v. Blasco,* 702 F.2d at 1331–32 (quoting *United States v. Davis,* 666 F.2d 195, 201 (5th Cir. Unit B 1982)) [1]; *United States v. Pintado,* 750 F.2d at 1503. This standard of review complies with our holding in *United States v. Bell,* 678 F.2d 547 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983):

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence. 678 F.2d at 549.

In *Blasco,* we found that the totality of the circumstances would have allowed a reasonably cautious jury to conclude that the appellants were involved in a drug conspiracy. The off-loading operation had taken place early in the morning at a secluded setting, and the agents had testified to the noise of the operation and the heavy smell of marijuana. The panel found that "it strains the imagination that these appellants were not aware of the off-loading taking place on the dock outside the house," 702 F.2d at 1332, and concluded that a jury could have found beyond a reasonable doubt

---

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. This circuit has adopted Unit B decisions of the former Fifth Circuit as binding precedent. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

that the defendants were guilty. *Id. Blasco* thus did not overrule our prior cases in this area, but simply brought them into accord with the *Bell* decision.[2]

In *Pintado,* a review of the totality of the circumstances led to a reversal of the defendant's conviction. Agents testified that at 1:40 a.m. "about six" persons were seen quickly and silently unloading large bundles from a boat docked behind the house. Customs officials approached in a car with lights flashing and announced "U.S. Customs." Two individuals were apprehended outside; the rest fled into the house. Three males and a female were arrested downstairs. Pintado was discovered hiding in a closet after officers forced open a locked bedroom door upstairs. A total of seven persons were arrested. Although at trial Pintado claimed that he had been sleeping during the off-loading operation and was unaware of the events outside, he was wearing a pair of pants and a shirt when found.

This court found that the jury could have reasonably rejected the defendant's claim that he was sleeping, but that there was no other evidence besides his presence and hiding to infer that he was a member of the conspiracy. The operation had been carried out silently and the marijuana had been placed in a garage that was not visible from the room where the appellant was discovered. Several sets of damp and dirty clothing were found downstairs; the government, however, did not show the number or sizes of the clothing or in any way connect the clothes with Pintado. Furthermore, the government was unable to correlate the number of individuals arrested and indicted

with the Customs official's observations of the number of people involved in the unloading process. The official estimated that "about six" persons were involved, but admitted that he could not tell whether four, five, six, seven or some other number of individuals were actually present.[3]

■ Unlike *Pintado,* a review of the totality of the circumstances in this case demonstrates that the jury could have found beyond a reasonable doubt that the appellants were involved in the drug conspiracy. Two agents, one using a star scope, observed from one hundred feet away the separate unloadings of the SUNSHINE and the ODETTE, each time counting eleven individuals forming a line to pass the bales from the boat up to the house.[4] Around 2 a.m., law enforcement officers moved in for the arrest with sirens and lights flashing, and the eleven individuals scattered. A DEA helicopter appeared minutes later, hovering overhead with its landing lights on.

The officers observed the various individuals as they fled to several areas. The first four arrested were found hiding in a cluster of sea grapes. The officer with the star scope had watched them jump a fence and take cover. Three individuals were seen running up the outside stairs to the upper level of the house and were apprehended after a search of the house; no one else was found in the house or seen escaping. Three other appellants were arrested after being observed running towards a fence near the canal; one was found swimming in the canal (although the night was very cold) and two hiding under a rock ledge. The

---

2. The appellants, for example, rely on *United States v. Lopez-Ortiz,* 492 F.2d 109 (5th Cir. 1974). *Lopez-Ortiz,* however, was decided prior to *Bell* and concluded that the evidence to be sufficient to convict had to "exclude every reasonable hypothesis save that of guilt, at least where, as here, there are explanations of presence and motives for flight that are consistent with innocence." 492 F.2d at 115. Thus the holding of *Lopez-Ortiz,* that mere presence and flight is insufficient evidence to convict, still is valid, but a post-*Bell* court need not exclude "every reasonable hypothesis save that of guilt" to uphold the conviction.

3. Furthermore, of the seven individuals arrested (six males and one female), only the six males were indicted, although "what appeared to be a female" was observed out on the seawall only forty minutes prior to the raid. An additional reason thus existed to doubt that the government's estimate of "about six" offloaders were the same six who were indicted.

4. Because of the darkness, the agents could not identify any of the individuals involved merely through their observations of the unloading.

last defendant was discovered hiding under the dock after an agent had seen him disappear into the shadows of the ODETTE. The first arrest occurred within four minutes of the commencement of the raid; the last arrest took place approximately ten minutes later.

■ The appellants argue that reasonable doubt existed because the officers conceded that they could not be sure that no one had escaped and because there was evidence that other individuals had been present.[5] One of the three defendants found upstairs also testified at trial that they had been watching television during the unloading, unaware of the events going on in the back yard.

Viewing the evidence as most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find sufficient evidence beyond the appellants' presence and flight to support the convictions. Although the officers did not testify as to the noise of the unloading or the smell of marijuana, two boats were unloaded at different times in the early hours of the morning by a human chain of eleven individuals—circumstances that would allow a jury to reasonably infer that those present were aware of the operation. Furthermore, and importantly, the officers were able to testify as to where the individuals had fled in attempting to escape, and they were subsequently found and arrested in these locations. Finally, unlike *Pintado,* the number of individuals observed unloading, eleven, corresponded with the number of persons found and arrested.[6]

The three individuals arrested in the upstairs room argue that their case is identical to Pintado's, who also was found hiding in an upstairs room. Yet, here, the officers saw three individuals going upstairs and no other individuals were found in the house. We thus have a further element not present in *Pintado,* where an unknown number of individuals had fled into the house when the raid commenced and no one saw any of those fleeing run up the stairs to the bedroom.

The facts of this case are not identical to either *Blasco* or *Pintado.* A review of all the circumstances, however, leads us to conclude that the facts here are more akin to *Blasco,* as there are circumstances beyond presence and flight that provided sufficient evidence for a jury to find beyond a reasonable doubt that the appellants were part of a drug conspiracy.

The petition for rehearing is DENIED.

---

**5.** The defendants primarily rely on evidence that two wallets were found containing eight hundred to a thousand dollars which did not belong to any of the defendants, that none of the defendants owned either the boats or homes involved, and that although an individual with an Uzi machinegun was seen patrolling, the machinegun was never found. The government, however, need not prove that other individuals were not on the grounds during the evening or were involved in the overall conspiracy (for example, providing the boats), but only that the eleven appellants who were arrested participated in the conspiracy.

**6.** Unlike *Pintado,* the agents in this case did not estimate that "about eleven" were involved, but testified that they had counted nine individuals on shore and two persons on the ODETTE unloading before the raid. The defendants point out that at an earlier trial one of the officers had testified that "about nine" were on shore unloading a boat that had docked earlier, the SUNSHINE. Even assuming that the officer was making an estimate of those on shore for unloading the SUNSHINE, his testimony does not suggest that he estimated the number of persons participating in the later unloading of the ODETTE, which was the vessel that was docked when the raid occurred.