UNITED STATES of America,
Plaintiff–Appellee,

v.

Ricky Lane BELL, Charles Franklin Aimaro, Stephen Mark Reinertsen, Defendants–Appellants.

No. 87–3023.

United States Court of Appeals,
Eleventh Circuit.

Dec. 1, 1987.

Anthony Martinez, Asst. Federal Public Defender, Tampa, Fla., for Bell.

Dick Greco, Jr., Tampa, Fla., for Aimaro.

David T. Weisbrod, Tampa, Fla., for Reinertsen.

Robert W. Merkle, U.S. Atty., Michael A. Cauley, Asst. U.S. Atty., Tampa, Fla., Gloria C. Phares, Sidney M. Glazer, U.S. Dept. of Justice, Washington, D.C., for the U.S.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

## I. PROCEDURAL HISTORY

Four co-defendants were tried jointly and convicted of possessing more than 50 kilograms of marijuana with intent to distribute and conspiracy with intent to distribute more than 50 kilograms of marijuana. Three co-defendants are appealing the convictions to this Court. The fourth, Daniels, did not appeal.

## II. STATEMENT OF FACTS

On November 5, 1985, officers from a variety of law enforcement organizations discovered more than 28,000 pounds of marijuana abandoned in two rental trucks near Estero Bay in Florida. At the time the marijuana was discovered (6:00 a.m.), the trucks had been recently abandoned and their occupants had fled. None of the defendants was arrested at the scene of the discovery. Police apprehended appellant Aimaro approximately one hour later, after he had hitched a ride from a passing motorist about one-quarter mile from the trucks. Appellants Bell and Reinertsen were apprehended, along with defendant Daniels, shortly after 9:00 a.m. when they emerged on foot from woods in an unauthorized portion of a private housing area three and one-half miles south of the abandoned trucks. At the time of their arrests the trousers of all appellants appeared wet, all appellants were between 15 and 20 miles from home, and all appellants were without transportation. A search of the area surrounding the abandoned trucks, both on the ground and by air, uncovered no other suspects.

The congregation of law enforcement personnel on the morning of November 5 followed several unusual occurrences. They had information that a delivery of marijuana was expected in the area. In the 30 hours immediately preceding the arrests police observed a 29 ft. "cigarette" boat with three 200 horse power engines returning from the Gulf of Mexico without running lights at 3:20 a.m. on November 4. One of the eight occupants told the officers that they had been searching for a friend whose boat had run out of gas, but he did not know the name of the person nor the type of boat they were seeking. The occupants included the brother of appellant Reinertsen, one of the brother's employees, and the brother of defendant Daniels. Two occupants carried a nylon gym bag containing portable CB radios and spare batteries. A dark van registered to defendant Daniels arrived and picked up several of the persons.

At 10:15 p.m. on November 4, a Customs agent observed two U-haul trucks parked in a corner of a motel parking lot in Naples, Florida. One truck left and then the van belonging to defendant Daniels arrived and parked next to the remaining truck. Several people gathered about the two vehicles. The van and remaining truck exited, traveling in opposite directions. The

agent followed the truck, which was later joined by a truck rented to defendant Daniels and containing his fingerprints on the driver's side. The two trucks were followed to a point near Estero Bay, where police officials congregated.

At 6:00 a.m., the officers heard engine noises, followed by slamming doors, *at least three different voices,* and then silence. The officers then traversed the 200 yards to the location of the two trucks. The truck engines were still warm but no one was found in the vicinity. The trucks were loaded with 28,138 pounds of marijuana wrapped in plastic.

Near the scene police found a "v" imprint in the sand caused by a boat hull, a gym bag containing a radio purchased three days earlier by appellant Reinertsen's brother's employee (one of the occupants of the cigarette boat), a utility bag, and a knapsack.

Shortly thereafter, police spotted appellant Aimaro hitchhiking in a residential area near Estero Bay. Aimaro's trousers were wet. Aimaro had no clear destination, no wallet or identification, was carrying a gym bag containing some equipment identical to that found in the knapsack, and told officers he had been camping in the woods and just walking around.

As the search for other offenders progressed, a deputy sheriff elected to head south of the scene. The deputy traveled to Bonita Bay Properties, a private resort three and one-half miles away. The resort had two guarded entrances and a roving patrol. All three guards maintained logs. While the deputy was there, resort personnel spotted three men (appellants Bell and Reinertsen, and defendant Daniels) emerge from a wooded area and walk through a portion of the property ordinarily closed to the public. The three appeared tired and disheveled, had wet and sandy trousers, and carried no luggage or fishing gear. By then the deputy knew that police had followed but lost a trail heading south of the scene. When the three acted nervously, the deputy placed them under arrest. One later stated that the three had entered through the main gate of the resort to look

for jobs. The guards had no record of their entrance and had general instructions not to let anyone in to look for a job.

Additional investigation showed that appellants Aimaro and Reinertsen worked together and were close personal friends. Two days earlier, someone named Aimaro or Aiman rented a hotel room for four people at the San Carlos Inn five miles north of the Bonita Bay Properties. The person listed Aimaro's correct home address on the registration card.

## III. ISSUES

1. Whether sufficient evidence existed to support convictions for conspiracy and possession with intent to distribute and to allow into evidence statements by co-conspirators.

2. Whether a motel registration card partially filled in by the motel guest and not verified by the desk clerk was admissible into evidence as proof of the facts stated.

3. Whether the trials of the appellants should have been severed from the trial of the remaining defendant who not only declined to present witnesses, but also declined to present a closing argument.

4. Whether probable cause existed to support arrests some distance from the location of the drug discovery.

5. Whether an arrest by a state official assigned to a federal agency triggers the speedy trial provision of the United States Code requiring an indictment or information to issue within 30 days after arrest.

## IV. DISCUSSION

### A. *Sufficiency of the Evidence*

Appellants contend that no evidence connected them to the marijuana, nothing showed their dominion or control over it, and no evidence established their knowing participation in any crime. In addition, appellants assert that insufficient independent evidence of a conspiracy existed to justify admission of co-conspirator statements. In particular, appellants assert

that mere presence, flight, association with people of ill repute, and making of false statements do not establish a conspiracy. They rely principally on *United States v. Pintado,* 715 F.2d 1501 (11th Cir.1983).

The government contends that there can be no dispute that there was in existence in the early hours of November 5, 1985 a conspiracy to offload marijuana, that trucks had been readied to carry the marijuana, and a radio had been purchased for communication. There was ample proof of the arrival of a boat and the fact that nearly 15 tons of marijuana had been offloaded, that the trucks were fully loaded at the site of the rendezvous and that at least three different voices had been heard by the officers who were some 200 yards away from the vehicles. There was thus ample evidence to establish the existence of a conspiracy and the overt acts. The question remains: was there sufficient evidence to tie the appellants to these conspiracies?

Immediately after the discovery, a deputy sheriff in a helicopter flew over the area which he estimated would be within the range that persons might traverse the swampy land after 6:00 a.m., and other police officers began searching the entire area on foot. No one other than the four persons arrested was seen by the helicopter pilot during his search. Two trucks had been parked together at a motel parking lot, at which time a truck registered to defendant Daniels was identified next to them. The trucks then rendezvoused at the offloading site. They had been loaded with marijuana and were about to leave the area when they were surprised by the police.

Aimaro was seen hitching a ride one quarter mile from the site, with his trousers wet either to his knees or to his hips. He was without transportation, a long way from his residence, and he had stated to the person who picked him up that he was willing to go wherever the driver was going. He later changed this statement to say that he wanted to go to Ft. Myers. His various statements were inconsistent with his location and the information that someone using his name had reserved a room for four at a nearby motel. When he was questioned after having been given his *Miranda* rights, his gym bag was searched, and the equipment therein was partially identical and partially compatible with that found in the knapsack at the scene of the offloading. Finally, he was a close friend and associate of appellant Reinertsen. This evidence was applicable to Aimaro and Reinertsen and also to Bell except that there is no evidence that Bell was already employed or that he was a close friend of Reinertsen's.

The government distinguishes *United States v. Pintado,* 715 F.2d 1501 (11th Cir. 1983) (conviction of appellant reversed since the only evidence of Pintado's participation in the conspiracy was his presence inside a closet in a house in the yard of which the police had found large quantities of marijuana), by noting that "appellants here were apprehended far from home, in the early morning hours, without a vehicle, not far from recently abandoned trucks of marijuana; their numbers (counting co-defendant Daniels) corresponded exactly with the reservation at the San Carlos Inn; and two of them gave false exculpatory statements." Gov.Br. at 29

This is not a "mere presence" case. It is not disputed that mere presence, standing alone, is not sufficient to convict a person of a conspiracy and presence and association with others at the time of the commission of an offense is not sufficient to convict such person. However, presence and association are factors to be considered with other evidence in evaluating the "totality of the circumstances" by which a jury can determine whether a defendant is guilty. *United States v. Blasco,* 702 F.2d 1315 (11th Cir.1983). We consider the circumstances under which these appellants were found much more like those in *Blasco* than in *Pintado,* where this Court stated: "We reach a contrary conclusion [to *Blasco*] here. The government provided no evidentiary basis other than appellant's presence in the house, hiding in the closet, from which an inference of conspiratorial participation could be drawn." 715 F.2d at 1505.

■ Here, the essential facts are undisputed: the arresting officers heard the sounds of motor vehicles at 6:00 in the morning in a wooded area adjacent to a swamp; they heard at least three different voices at the time they heard the engines of the motor vehicles being turned off; they immediately sent for a helicopter to search the area and several of the officers started searching on foot, as well. At about the proper time that it would take for him to get to the road after the offloaders were surprised, Aimaro was seen hitchhiking, willing to go anywhere the automobile driver wished to take him, and the other appellants were seen walking out of the woods some three miles away from the offloading point in exactly the length of time estimated to have been required for them to have walked in the sand and water to the private property on which they were apprehended. At that point, they gave inconsistent stories as to their purpose for being there, and the four of them all together equaled the exact number of persons for whom the jury could find Aimaro had reserved rooms at a nearby motel.

> We conclude that, as stated in *Blasco:*
>
> Viewing the total circumstances recited above in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we conclude that the jury properly could have found beyond a reasonable doubt that these appellants were not present for some innocuous reason, but were a part of the overall and well orchestrated conspiracy to offload marijuana. The circumstantial evidence adduced at trial was sufficient to convict on both counts....

702 F.2d at 1332.

B. *The Hotel Registration Card*

Over the objections of the defendants the United States introduced in evidence a registration card for the San Carlos Inn. The employee who produced the card read the name which had been placed on the card by the registrant as "Aiman." The address given by the registrant, however, was the correct address of appellant Aimaro. Aimaro's drivers license was introduced in evidence for comparison of the signatures and the jury could have found that the signature on the registration card was that of appellant Aimaro.

Defendants objected to the introduction of the registration card on the ground that there had been no proof that the person signing the card was the person he represented himself to be, and therefore, the registration card could not be accepted as proof of the fact that appellant Aimaro had actually made the reservation for four persons on the night of November 3. The government concedes:

> Appellants are correct, however, that without testimony that it was the customary business practice for the motel to verify the name and address the guest provided with some sort of identification such as a drivers license or credit card, the card cannot be admitted to prove, by itself, that appellant Charles Aimaro registered at the hotel. *United States v. Scallion,* 533 F.2d 903, 914–915 (5th Cir. 1976).

Gov.Br. at 44.

■ The government contends, however, that as to the name and address of the guest, the card was properly admissible for the non-hearsay purpose of showing that someone using the name "Chuck Aimaro" and appellant Aimaro's address registered at the San Carlos Inn. *Scallion,* 533 F.2d at 914–915. The government then contends that the jury could compare the purported guest signature with appellant Aimaro's drivers license, which was introduced in evidence, and determine that the registration had actually been made by appellant Aimaro. *United States v. Lieberman,* 637 F.2d 95 (2d Cir.1980). Under the circumstances, we conclude that the trial court did not abuse its discretion in admitting the card.

C. *Motion for Severance*

■ Appellants contend that, when it became apparent that co-defendant Daniels offered no closing argument, this amounted to a tacit plea of guilty and that, therefore, they were so prejudiced that the fail-

ure of the trial court to sever at that time was prejudicial error. Our standard of review is abuse of discretion by the trial court. *United States v. Machado,* 804 F.2d 1537, 1544 (11th Cir.1986). We conclude that the mere fact that defendant Daniels sat mute during the oral argument did not place any greater burden on the remaining defendants than if his counsel had made an oral argument, which would have been somewhat similar to that of the other defendants. The denial of the motion to sever was therefore not an abuse of the trial court's discretion.

D. *Existence of Probable Cause for Arrest*

■ Because of the existence of the many circumstances heretofore described and because we have found that the circumstantial evidence was sufficient to prove that each of the appellants was a member of the conspiracy, we conclude that there was sufficient evidence known to the officers at the time of the arrests to establish probable cause for the arrests of all of the three appellants.

E. *Right to Speedy Trial*

■ Appellant Aimaro was arrested on November 5, 1985 by a narcotics investigator for the Collier County Sheriff's Department, assigned to the drug enforcement administration task force in Southern Florida. He was not indicted until July 24, 1986 and he therefore contends that he was tried in violation of the Speedy Trial Act, 18 U.S.C. § 3161(b), which requires the filing of a charging document within 30 days of the date on which an individual was arrested. The federal courts have universally followed the construction of the statute that is exemplified in *United States v. Russo,* 796 F.2d 1443 (11th Cir.1986), where at 1450–1451, this Court said:

> ... Although the government may have been extensively involved in the ongoing investigation of Pine's case, Pine was being held to answer state charges up to the time that those charges were dismissed. He was at no time in custody to answer federal charges or under federal

arrest until October 24, 1983, when the state charges were dismissed....

It was only after the federal indictment was later returned in July 1986 that the clock under the Speedy Trial Act began running.

### V. CONCLUSION

We conclude that all of the judgments should be and they are AFFIRMED.