[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 29, 2010
JOHN LEY
CLERK

No. 09-10791
Non-Argument Calendar

_____

D. C. Docket No. 07-20987-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AURORA RAMENTOL,
JACQUELINE PEREZ-CASTILLO,
LIZABETH PEREZ,
ERICK CLAVIJO,

Defendants-Appellants.

ESTER CRESPO,

Defendant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(December 29, 2010)

Before BLACK, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Aurora Ramentol, Jacqueline Perez-Castillo, Lizabeth Perez, and Erick Clavijo appeal their convictions on one count each of wire fraud, resulting from their participation in a mortgage fraud scheme. Perez also appeals her $497,845.25 restitution order, imposed following her conviction.

On December 13, 2007, a federal grand jury seated in the U.S. District Court for the Southern District of Florida returned a 29-count indictment against, among several others, Ramentol, Perez-Castillo, Perez, and Clavijo. Each of these Defendants was charged with one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, stemming from their participation in an extensive mortgage fraud scheme. Count 1 of the indictment charged Juan Torrens, Rachel Torrens, Daniel Ramos, Katherine Harris, and Alfonso Muxo with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, as well as several substantive counts of wire fraud.

In short, the conspiracy worked as follows: Juan Torrens and Ramos would recruit and pay "straw buyers" to lend their credit and personal information for the Torrenses to obtain lower interest rate mortgages for the purchase of investment properties to "flip" for profit; the Torrenses would submit mortgage applications

2

which included falsified employment, income, and other financial information on behalf of the straw buyers, so that higher loan amounts could be obtained; Muxo would provide inflated property appraisals, to support overstated sale prices and to enable Juan Torrens to obtain potential profits up-front (often to fund remodeling or upgrades); and Harris would provide falsified settlement statements and HUD-1 forms to lenders to conceal material information regarding the sales and profits). The Torrenses, Ramos, Harris, and Muxo all pleaded guilty to the conspiracy charge. The substantive counts alleged that these straw buyers, Ramentol, Perez-Castillo, Perez, and Clavijo, amongst others, participated in a scheme to defraud the lender and to obtain money by means of materially false and fraudulent pretenses, representations, and promises. Ramentol, Perez-Castillo, Perez, and Clavijo pleaded not guilty, and proceeded to trial. The jury rendered guilty verdicts as to all charged Defendants, and these appeals followed.

Each of the four Defendants-Appellants argues on appeal that the government failed to introduce evidence sufficient for a jury to convict them of wire fraud. Clavijo also argues that the district court erred in admitting copies of documents contained in his closing file, as they were allegedly not properly authenticated. Finally, Perez argues that the district court erred in calculating the amount of the loss in establishing her sentencing guideline and in setting

3

restitution.

I.

> [We] review[] sufficiency of the evidence *de novo*,
> viewing the evidence in the light most favorable to the
> government, with all reasonable inferences and
> credibility choices made in the government's favor. We
> will not overturn a conviction on the grounds of
> insufficient evidence unless no rational trier of fact could
> have found the essential elements of the crime beyond a
> reasonable doubt. Finally, our Court must accept a jury's
> inferences and determinations of witness credibility.

*United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004) (citations and

quotations omitted); *see also United States v. US Infrastructure, Inc.*, 576 F.3d

1195, 1203 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 1918 (2010) ("The evidence

need not be inconsistent with every hypothesis other than guilt, as the jury is free

to choose among reasonable constructions of the evidence.") (citation and

quotation omitted).

A district court's denial of a motion for new trial based on the weight of the

evidence is reviewed for clear abuse of discretion. *United States v. Pedrick*, 181

F.3d 1264, 1266–67 (11th Cir. 1999); *see also United States v. Martinez*, 763 F.2d

1297 (11th Cir. 1985).

> The decision to grant or deny a new trial motion based on
> the weight of the evidence is within the sound discretion
> of the trial court. An appellate court may reverse only if
> it finds the decision to be a clear abuse of that discretion.

4

> While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really "exceptional cases."

*Id.* at 1312–13 (citations omitted).

Under 18 U.S.C. § 1343, wire fraud requires proof beyond a reasonable doubt that "(1) the defendant participated in a scheme or artifice to defraud; (2) with the intent to defraud; and (3) used, or caused the use of, interstate wire transmissions for the purpose of executing the scheme or artifice to defraud." *United States v. Williams*, 527 F.3d 1235, 1240 (11th Cir. 2008). "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). "Section 1343 targets not the defendant's creation of a scheme to defraud, but the defendant's *execution* of a scheme to defraud." *Williams*, 527 F.3d at 1241.

Federal Rule of Evidence 901(b)(3) provides that a document may be authenticated through comparison by the trier of fact with specimens which themselves have been authenticated. This Court has previously held, consistent

5

with that rule, that a jury is entitled to make a comparison between a known, genuine signature of a defendant, and a signature on a challenged document purporting to be that of the defendant, to decide whether the defendant signed the document. *United States v. Bell*, 833 F.2d 272, 276 (11th Cir. 1987); *United States v. Cashio*, 420 F.2d 1132, 1135 (5th Cir. 1969).[1]

Considering the trial record, each of the Appellants has failed to demonstrate that no rational jury could have found the essential elements of wire fraud under the evidence presented by the government. The Defendants' primary argument on appeal, that they did not intend for the respective lenders funding their loan transactions to suffer financial losses because they expected Torrens to pay the mortgages, ignores the lenders' testimony that they would not have funded the loans at all had they been aware of the significant misrepresentations made by each Defendant in the closing documents they signed. Moreover, even assuming that Torrens paid (or would pay) the mortgages, the lenders would still have suffered financial harm, because the loans properly would have carried a higher interest rate had the truth about the investment purposes and the risks of the loans been disclosed and not misrepresented to the lenders. Thus, at a minimum, the lender

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

would lose money on each mortgage payment Torrens made as a result of the fraud committed by the Defendants, because the misrepresentations resulted in lower interest payments. The jury's verdict as against each Defendant was therefore sufficiently supported by the evidence.

With respect to the individual Defendants, the record reveals as follows:

Ramentol

The jury heard evidence that Ramentol lent her credit to Juan Torrens in exchange for a payment of $8000. It was undisputed that there were material misrepresentations on Ramentol's final loan application and a certification at closing that Ramentol would occupy the property as her primary residence. The lender funding the Ramentol loan testified that it would not have gone through with the financing absent these misrepresentations, or, alternatively, that the interest rate would have been higher because it was an investment property. Ramentol has failed to demonstrate that no rational jury could convict her of wire fraud on this evidence.

The district court's ruling that the jury could compare Ramentol's genuine signature on her bank signature card with the signatures on the closing documents to determine whether Ramentol signed them, is fully consistent with Federal Rule of Evidence 901(b)(3), and this Court's holding in *Cashio*, 420 F.2d at 1135.

7

Ramentol has thus not shown error in this regard either.

Perez-Castillo

The jury heard evidence that Perez-Castillo agreed to lend her credit to Juan Torrens in exchange for a payment of $8000. Torrens testified that he spoke directly to Perez-Castillo on the phone, making it known to her that her loan application would be falsified. It was undisputed that there were material misrepresentations on the final loan application signed by Perez-Castillo at closing, and her certification at closing that she would occupy the property as her primary residence was false. In an interview, Perez-Castillo admitted to a financial auditor with the U.S. Attorney's Office, Lewis Sellers, that she signed those key documents at closing. The lender funding the Perez-Castillo loan testified that it would not have gone through with the financing absent these misrepresentations, or, alternatively, that the interest rate would have been higher because it was an investment property. Perez-Castillo has failed to demonstrate that no rational jury could convict her of wire fraud on this evidence.

Perez

The jury heard evidence that Perez agreed to lend her credit to Juan Torrens in exchange for a payment of $8000. It was undisputed that there were material misrepresentations on the final loan application signed by Perez at her closing, and

8

her certification at closing that she would occupy the property as her primary residence was false. When interviewed in the presence of counsel, Perez said that Ramos described this arrangement as an investment where it did not matter that Perez had no money. The lender funding Perez's loan testified that it would not have gone through with the financing absent these misrepresentations, or, alternatively, that the interest rate would have been higher because it was an investment property. Perez has failed to demonstrate that no rational jury could convict her of wire fraud on this evidence.

Clavijo

The jury heard evidence that Clavijo agreed to lend his credit to Juan Torrens in exchange for a payment of $8000. Torrens testified that he spoke with Clavijo on the phone, as Clavijo had questions about possible tax implications relating to the straw sale. It was undisputed that there were material misrepresentations on the final loan application Clavijo admitted to signing at closing, and his certification at closing that he would occupy the property as his primary residence was false. Clavijo also admitted to Lewis Sellers that he signed the closing documents. The lender funding the Clavijo loan testified that it would not have gone through with the financing absent these misrepresentations, or, alternatively, that the interest rate would have been higher because it was an

9

investment property. Clavijo has failed to demonstrate that no rational jury could convict him of wire fraud on this evidence.

II.

"The decision to admit or exclude evidence is committed to the sound discretion of the trial court." *United States v. Taylor*, 17 F.3d 333, 338 (11th Cir. 1994) ("On review, we will not disturb the trial court's evidentiary rulings unless the court has clearly abused its discretion in this area.") (citations and quotation omitted). A district court has discretion to determine the authenticity of a challenged document, and "that determination should not be disturbed on appeal absent a showing that there is no competent evidence in the record to support it." *United States v. Munoz*, 16 F.3d 1116, 1120-21 (11th Cir. 1994) (citation and quotation omitted).

Federal Rule of Evidence 901(a) provides that: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Such authentication may be established by the testimony of a witness with knowledge that the matter is what it is claimed to be. Fed. R. Evid. 901(b)(1).

> A duplicate [of a document] is admissible to the same extent as an original unless (1) a genuine question is

> raised as to the authenticity of the original or (2) in the
> circumstances it would be unfair to admit the duplicate in
> lieu of the original.

Fed. R. Evid. 1003.

Clavijo has failed to demonstrate that the district court erred in admitting the scanned copies of his closing documents. Ms. Taylor, with WMC Mortgage, testified that all documents received by the lender were scanned into their computer, consistent with company policy. Once scanned, the documents could not be edited, altered, or manipulated. The copies of the Clavijo documents introduced at trial were true and complete copies downloaded from WMC's system. The district court therefore did not err in finding that the Clavijo closing documents were what the lender claimed they were. Moreover, Clavijo admitted that he signed the relevant documents at closing, and specifically identified his signature on the documents. Under these facts, Clavijo failed to raise a genuine question about the authenticity of the original closing papers, and was thus not entitled to demand production of the originals instead of the scanned copies admitted.

### III.

"We review *de novo* the interpretation and application of the Guidelines, and we review underlying factual findings for clear error." *United States v. Foley*, 508

11

F.3d 627, 632 (11th Cir. 2007) (citation omitted). For the purposes of restitution, the burden of proof is upon the government by a preponderance of the evidence. *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997). Where a district court applies an advisory sentencing guideline, it can enhance the sentence based on facts it finds by a preponderance of the evidence without running afoul of the Sixth Amendment. *United States v. Chau*, 426 F.3d 1318, 1323–24 (11th Cir. 2005).

"[T]he sentencing Guidelines require a district court, at the sentencing stage, to make *independent* findings establishing the factual basis for its Guidelines calculations. . . . The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." *United States v. Hamaker*, 455 F.3d 1316, 1338 (11th Cir. 2006) (citations and quotations omitted).

U.S. Sentencing Guidelines Manual § 2B1.1 provides that the applicable loss amount is the greater of the actual loss—"the reasonably foreseeable pecuniary harm that results from the offense"—or the intended loss—"the pecuniary harm that was intended to result from the offense." *See* § 2B1.1 cmt. n.3(A)(i) and (ii). Further, where collateral is pledged or provided by the defendant, the loss amount

12

is to be reduced by "the amount the victim has recovered at the time of sentencing from disposition of the collateral." § 2B1.1 cmt. n.3(E)(ii). Market value for the collateral at the time of sentencing is used, however, where such collateral has not been disposed of at the time of sentencing. *Id.*

On the sentencing record, we perceive no error in the district court's reasonable estimate of the loss, and its resulting restitution order. At sentencing, the government introduced into evidence documents showing that the property for which Perez acted as a straw buyer had been sold by the lender for $515,000, leaving an outstanding loan amount (loss) of over $528,000. Consistent with the dictates of § 2B1.1, cmt. n.3(A)(i) and (ii), and cmt. n.3(E)(ii), the district court properly applied this actual loss figure. This same loss figure was used as the starting point for the purposes of restitution, with a reduction by the district court for extraneous sale-related costs for which Perez should not be held responsible. The restitution amount ordered was therefore based on undisputed evidence introduced by the government, and was not clearly erroneous.

Upon review of the record and consideration of the parties' briefs, we affirm the convictions as to each Appellant, and affirm Perez's sentence.

**AFFIRMED.**[2]

---

[2]Appellant's request for oral argument is denied.